ELECTRONICALLY FILED
Van Buren County Circuit Court
Debbie Gray, Circuit Clerk
2021-Mar-19 11:30:32
71CV-21-39
C20D01 : 35 Pages

## IN THE CIRCUIT COURT OF VAN BUREN COUNTY, ARKANSAS
## _____CIVIL DIVISION

**LARRY W. EUBANKS AND CAROLYN D.**
**EUBANKS, individually and on behalf of all others**
**similarly situated**                                    **PLAINTIFFS**

v.                          Case No. _____

**FLYWHEEL ENERGY PRODUCTION, LLC,**
**XTO ENTERGY, INC.**                                    **DEFENDANTS**

---

### CLASS ACTION COMPLAINT

---

Comes now the Plaintiffs Individually and on behalf of all others similarly situated, ("Plaintiffs") by and through their attorneys, and for their Class Action Complaint against Defendants FLYWHEEL ENERGY PRODUCTION, LLC ("FLYWHEEL PRODUCTION") and XTO ENTERGY, INC. ("XTO ENERGY") state:

### INTRODUCTION

1.      FLYWHEEL PRODUCTION operates 3,630 active natural gas wells in Arkansas, as of September 25, 2020. For some of these wells, XTO ENERGY is the leaseholder. This lawsuit only concerns those wells where FLYWHEEL PRODUCTION is the operator and XTO ENERGY is the leaseholder under a gross royalty lease.

2.      In January 2019, FLYWHEEL PRODUCTION began deducting substantial, unauthorized costs from its monthly royalty checks, disregarding the clear language of its royalty contracts, its decades-old business practices, and the understanding and interpretation of the

understanding and interpretation of the Arkansas Oil & Gas Commission (the "Commission").[1] FLYWHEEL PRODUCTION's, and XTO ENERGY's conduct harms innocent royalty owners and FLYWHEEL PRODUCTION's, and XTO ENERGY's honest competitors..

3.      This Action primarily seeks this Court's final determination that the Plaintiffs' and the Class's full contractual rights to payments from XTO ENERGY and FLYWHEEL PRODUCTION for the first 1/8 royalty based on their "gross proceeds" contracts are preserved by Ark. Code Ann. §15-72-305(a)(8)(C).

4.      Alternatively, the Plaintiffs seek this Court's final determination that the use of statutory term "net proceeds" Ark. Code Ann. §15-72-305(a)(3) prohibits FLYWHEEL PRODUCTION's and XTO ENERGY post-production deductions, except for taxes, assessment, and true third party costs, on any royalty payment, including the first 1/8 royalty payment and any excess royalty payment.

5.      Plaintiffs seek class certification under Ark. R. Civ. P. 23, a final declaratory judgment under Arkansas Uniform Declaratory Judgments Act, Ark. Code Ann. § 16-111-101, *et seq.* and Rule 57 of the Arkansas Rules of Civil Procedure, and "further relief" under Ark. Code Ann. § 16-111-108 which would allow the Plaintiffs and the Class to receive substantial benefits they otherwise could not obtain, including monies Defendants have been held in escrow or kept by Defendants.

6.      This Action also seeks class certification and damages for XTO ENERGY's breach

---

[1]      On July 23, 2020, the Commission issued an Order finding FLYWHEEL PRODUCTION illegally took post-production deductions from integrated royalty owners. *See* Exhibit No. 1, Order No. 078A-2019-10 (July 23, 2020).

of contract, unjust enrichment and deceptive trade practices with their scheme to underpay royalty owners in FLYWHEEL PRODUCTION-operated wells where FLYWHEEL PRODUCTION is or was the operator **and** XTO ENERGY is or was leaseholder or assignee from and after January 2019.

### PARTIES, JURISDICTION, AND VENUE

7.    Plaintiffs are individuals and citizens of Cleburne County, Arkansas owning oil, gas, and other mineral interests in Van Buren County, Arkansas.

8.    The Class are citizens of various states and own oil, gas, and other mineral interests in lands and wells in the State of Arkansas, as further defined.

9.    FLYWHEEL ENERGY PRODUCTION, LLC, is an Oklahoma Limited Liability Company with a principal address in Oklahoma City, Oklahoma. FLYWHEEL PRODUCTION owns and operates certain natural gas assets in the Fayetteville Shale and may be served with process in this Action through its registered agent: CT Corporation System, 124 West Capitol Ave., Ste. 1900, Little Rock, AR 72201-3717.

10.    XTO ENERGY, INC., a Delaware Corporation with a principal address in Spring, Texas. XTO ENERGY owns and operates certain natural gas assets in the Fayetteville Shale, and may be served with process in this Action through its registered agent: Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201-2425.

11.    A substantial part of the event or omission giving rise to the cause of action occurred in Van Buren County. The Plaintiffs resided in Van Buren County at the time of the event or omission giving rise to the cause of action.

12.    This Court has subject matter jurisdiction over this Action under Ark. Const. Amend. 80 §6(A) which makes the trial court "the original jurisdiction of all justiciable matters

not otherwise assigned pursuant to the Arkansas Constitution."

13.    At all times relevant hereto, the employees of each Defendant, their subsidiaries, affiliates and other related entities, were the agents, servants and employees of each Defendant, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this complaint is made to any act or transaction of each Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of each Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of each Defendant while actively engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

14.    Southwestern Energy Company, including its subsidiaries, owned working interests and acted as operator of the leaseholds and wells in which Plaintiffs and Class owned mineral interests in the Fayetteville Shale, a part of the Arkoma Basin in Arkansas involving parts of Cleburne, Conway, Faulkner, Van Buren, and White counties.

15.    On or about December 3, 2018, Flywheel Energy, LLC, and certain wholly-owned subsidiaries, acquired from Southwestern Energy, SWN Production (Arkansas), LLC, Fayetteville Shale assets in Arkansas, including wells, an integrated midstream gathering system, compressor stations, and oil and gas leases.

16.    Due to this acquisition, on or about December 3, 2018, SWN Production (Arkansas), LLC was converted to FLYWHEEL PRODUCTION. The Certificate of Conversion is attached as Exhibit No. 2 and incorporated herein by reference.

17.    Upon information and belief, due to this conversion, FLYWHEEL PRODUCTION

became the operator of the leaseholds and wells in which Plaintiffs and Class owned mineral interests.

18.    XTO ENERGY has outstanding contractual obligations with Lessors like Plaintiffs to pay royalties under the lease.

19.    As of the date of this filing, XTO ENERGY has the obligation to Lessors as Lessee to make gross royalty payments in compliance with the Plaintiffs and Class's underlying gross proceeds leases.

20.    FLYWHEEL PRODUCTION and XTO ENERGY have taken illegal deductions from Plaintiffs and the Class members, and breached the terms of the Plaintiffs' and Class Members' leases.

21.    Upon information and belief, on or about May 1, 2019, FLYWHEEL PRODUCTION became obligated to make royalty payments to Plaintiffs and Class based upon its obligation as operator of the leaseholds and wells in which Plaintiffs and Class owned mineral interests under Ark. Code Ann. §15-72-305.

22.    Upon information and belief, XTO ENERGY are obligated to make royalty payments to Plaintiffs and Class based upon said **gross proceeds** oil and gas leases due to its obligation as leaseholder.

23.    Plaintiffs' Oil and Gas Lease provides that XTO ENERGY:

"covenants and agrees"

B.    To pay Lessor for gas of whatever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefore, twenty percent (20%) of the gross proceeds received by Lessee for the gas sold, used off the premises, or in the manufacture of products therefrom, but in not even more than twenty percent (20%) of the actual amount received by

**Page 5 of 15**

Lessee, said payment to be made monthly;

D.    Lessee shall not deduct any costs or expenses from such gross proceeds except Lessor's pro rata share of any severance taxes that may become payable out of Lessor's share of gross production . . .

Exhibit No. 2.

24.    Upon information and belief, on or about May 1, 2019, Plaintiffs and the Class learned FLYWHEEL PRODUCTION as the producer started taking illegal deductions from royalty payments, XTO ENERGY have failed to reimburse Plaintiffs and the Class Members for such deductions taken by the operator.

25.    FLYWHEEL PRODUCTION's predecessor in title, Southwestern Energy Company, including its subsidiaries, properly paid Plaintiffs and Class under its obligation as operator and under its obligation as leaseholder under their gross proceeds oil and gas lease.

26.    Upon information and belief, FLYWHEEL PRODUCTION is unlawfully taking post-production deductions from Plaintiffs and Class under its role as operator (Ark. Code Ann. § 15-72-305(a)(6)(A)).

27.    Upon information and belief, XTO ENERGY failed and is failing to fulfill its obligation as the leaseholder under the gross proceeds lease.

## CLASS ACTION ALLEGATIONS

28.    Plaintiffs bring this Action individually and on behalf of a class of similarly situated persons under Arkansas Rule of Civil Procedure 23.

29.    Plaintiffs sue on their own behalf and for the following Class:

All royalty owners in FLYWHEEL PRODUCTION-operated wells with gross proceeds leases, where FLYWHEEL PRODUCTION is or was the operator and XTO ENERGY is or was the leaseholder or assignee. The Class Claims relate only to the proper

gross proceeds payment arising from gross proceeds leases of hydrocarbons produced from wells located in the State of Arkansas.

The Class Claims do not include lessor's claims in those wells during those periods where FLYWHEEL PRODUCTION was not the operator and XTO ENERGY was not the leaseholder or assignee.

The persons or entities excluded from the Class are (a) governmental entities, including federal, state, and local governments and their respective agencies, departments, or instrumentalities; (b) the States and territories of the United States or any foreign citizens, states, territories, or entities; (c) the United States of America; and (d) publicly traded oil and gas exploration companies and their affiliates, including FLYWHEEL PRODUCTION, XTO ENERGY and their respective parents, affiliates, and related entities (the "Class").

30.    The members of the Class are so numerous that joinder of all members is impracticable. Although the precise number of members of the Class is unknown, enough members are putative Class Members to meet the requirements of Rule 23(a)(1). According to records from the Arkansas Oil and Gas Commission's website, FLYWHEEL PRODUCTION operates hundreds of natural gas wells in the State of Arkansas. *See* aogc.state.ar.us/WellData/Wells.aspx (last visited Sep. 4, 2020).

31.    The precise number and identity of the Class's members can be determined by the books and records of Defendants.

32.    Plaintiffs are members of the Class.

33.    Plaintiffs' claims are typical of the claims of all Class Members in that all putative Class Members had gross proceeds leases with FLYWHEEL PRODUCTION -operated wells where FLYWHEEL PRODUCTION is or was the operator and XTO ENERGY was or is leaseholder or assignee.

34.    No antagonism exists between the interests of the Representative Plaintiffs and the

interest of other Class Members, and the Plaintiffs are fully prepared to pursue their case diligently on their behalf. Plaintiffs are otherwise proper persons to serve as Class Representatives and are interested in the outcome of this litigation and understand the importance of adequately representing the Class. Further, Plaintiffs will fairly and adequately protect the interests of the Class sought to be certified in this Action.

35.    Plaintiffs' counsel are experienced in class action and oil and gas litigation and are well qualified to conduct this litigation.

36.    There exist numerous common questions of law or fact within the meaning of Rule 23 and these common questions predominate over any questions affecting only individual Class Members within the meaning of Rule 23(a)(2). These common questions include, but may not be limited to:

    a.    Are the gross proceeds leases substantially similar among class members?

    b.    Did FLYWHEEL PRODUCTION calculate royalty payments for the first 1/8 royalty due based on "net proceeds," not "gross proceeds" without regard to the underlying lease term?

    c.    Did FLYWHEEL PRODUCTION alter its "paydeck" software to calculate its royalty payments for the first 1/8 royalty due based on "net proceeds" without regard to the underlying lease term?

    d.    Did FLYWHEEL PRODUCTION deal fairly with its "gross proceeds" leaseholders?

    e.    Did XTO ENERGY and FLYWHEEL PRODUCTION engage in overall "unconscionable, false, and deceptive acts and practices in business" by failing to comply with the terms of Plaintiffs' and Class' gross proceeds oil and gas leases?

    f.    Was XTO ENERGY's failure to make royalty payments for the first 1/8 royalty due based on "net proceeds," not "gross proceeds"

without regard to the underlying lease term part of an overall scheme perpetrated by XTO ENERGY?

g.  Has Defendant failed to account and/or to properly account to Plaintiffs and the Class Members for the royalties due?

h.  Should Defendant prospectively account to Plaintiffs and the Class Members?

i.  As applied, is Ark. Code Ann. § 15-72-305 unconstitutional, and should the remedy of equitable recission be available to the Plaintiffs and the Class?

j.  Does Ark. Code Ann. § 15-72-305(a)(3) prohibit post-production deductions except for taxes, assessment, and true third-party costs?

37.    Defendant has acted on grounds that apply generally to Plaintiffs and all Class Members, so declaratory and injunctive relief is necessary and appropriate for the Class as a whole.

38.    The Class is sufficiently cohesive.

39.    The critical remedy that Plaintiffs seek is primarily declaratory and injunctive. The monetary relief that Plaintiffs seek is secondary to, and flows from, the declaratory/injunctive request.

40.    The common pattern of conduct by Defendant (and the common legal theories for redressing the misconduct) support the maintenance of this Action as a class action under Rule 23(b) of the Arkansas Rules of Civil Procedure.

41.    Under Rule 23(b), a class action is superior to the other available methods for the fair and efficient adjudication of the controversy because it is desirable to concentrate the litigation of the Class Members' claims to one forum, since it will conserve party and judicial resources and facilitate the consistency of adjudication.

42.    The damages suffered by individual Class Members are relatively modest, and their

interest in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for them to seek individual redress for the wrongs done to them, the class mechanism of Rule 23 is superior. Plaintiffs know of no difficulty encountered in the management of this Action that would preclude its maintenance as a class action.

43.     It is administratively feasible to determine whether a particular individual is a member of the Class, because FLYWHEEL PRODUCTION and XTO ENERGY have the administrative ability to identify all Class Members because it distributes royalties on a monthly basis.

44.     Upon information and belief, Plaintiffs and the Class have received royalty payments for the first 1/8 royalty due based on "net proceeds," not "gross proceeds" without regard to the underlying lease term, and based on FLYWHEEL PRODUCTION's and XTO ENERGY's belief that "net proceeds" includes post-production deductions for matters beyond taxes, assessment, and true third-party costs, thereby allowing FLYWHEEL PRODUCTION and XTO ENERGY to be unjustly enriched at the expense and to the detriment of Plaintiffs and Class.

45.     Defendants' failure to pay Plaintiffs and the Class based upon mutually negotiated gross proceeds oil and gas leases resulted in harm to Plaintiffs and the Class.

## COUNT I:
## DECLARATORY JUDGMENT

46.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

47.     Plaintiffs request that the Court issue a judgment under Ark. Code Ann. § 16-111-101 and Rule 57 of the Arkansas Rules of Civil Procedure, and declare that:

a. Ark. Code Ann. §15-72-305(a)(8)(C) preserves XTO ENERGY contractual obligations to distribute a royalty in the amount specified by the contract.

b. Ark. Code Ann. § 15-72-305 does not allow FLYWHEEL PRODUCTION or XTO ENERGY to deduct from the first 1/8 royalty any expenses. Ark. Code Ann. § 15-72-305 prohibits FLYWHEEL PRODUCTION or XTO ENERGY's deduction of post-production expenses, except for taxes, assessment and true third party costs.

c. If Ark. Code Ann. § 15-72-305 is interpreted or applied to prohibit or to override gross proceeds leases, then that interpretation or application is an unconstitutional taking and transfer of the Plaintiffs' and Class Member's valuable rights, interests and properties to FLYWHEEL PRODUCTION or XTO ENERGY for private in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article 2 Section 22 of the Arkansas Constitution, and the Court must declare the leases void and unenforceable, and pay over to Plaintiffs and the Class Members, including the amount eighth-eighths (8/8ths) of the value of all gas that has been or will be produced and sold by FLYWHEEL PRODUCTION or XTO ENERGY, with interest thereon and any monetary or economic benefits, advantages or profits derived therefrom by FLYWHEEL PRODUCTION or XTO ENERGY.

d. All proceeds attributable to Plaintiffs' and the Class Members' interests must be released from escrow and paid to the Plaintiffs and the Class Members.

e. Defendants must account for the methodology it used to calculate the escrowed and withheld proceeds.

f. If Ark. Code Ann. § 15-72-305 is interpreted or applied to prohibit or to override gross proceeds leases, then FLYWHEEL PRODUCTION or XTO ENERGY must account to the Plaintiffs and the Class Members as unleased mineral owners and give up and pay over to Plaintiffs and the Class Members the value to FLYWHEEL PRODUCTION or XTO ENERGY of all gas produced and sold attributable to Plaintiffs and the Class Members, including interest and any other monetary or economic benefits, advantages of profits of FLYWHEEL PRODUCTION or XTO ENERGY.

48. Under Ark. Code Ann. § 16-111-108, Plaintiffs seek "further relief" on any

declaratory judgment or decree entered in this Action.

## COUNT II:
## BREACH OF CONTRACT

49.     Plaintiffs hereby incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

50.     Plaintiffs and the Class entered into gross proceeds oil and gas leases, which were acquired by Defendants through the above-mentioned conversion, which state that the Lessee (Defendant) "covenants and agrees" to pay the Lessor (Plaintiff and the Class) in accordance with the lease.

51.     Defendants failed to pay Plaintiffs and the Class in accordance with the gross proceeds oil and gas lease.

52.     Defendants have failed to do what the lease required of it and therefore there is substantial failure of consideration.

53.     Plaintiffs and the Class have been injured due to Defendants' failure to pay Plaintiffs and the Class in accordance with the terms of the lease.

## COUNT III:
## UNJUST ENRICHMENT

54.     Plaintiffs hereby incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

55.     Plaintiffs and Class provided good and valuable consideration, specifically the exclusive use of lands described in the Plaintiffs' and each member of the Class' gross proceeds oil and gas lease for the purpose of prospecting, exploring, drilling, mining, operating for and

producing oil or gas or both.

56.    It was reasonably expected that Plaintiffs and the Class would be paid in accordance with the terms of the gross proceeds oil and gas leases.

57.    Defendant was aware that Plaintiffs and the Class were previously paid in accordance with the terms of the gross proceeds lease prior to the above-mentioned conversion and were expecting to be paid in accordance with the terms of the gross proceeds lease after the above-mentioned conversion.

58.    Defendants' failure to pay in accordance with the terms of Plaintiffs' and the Class' gross proceeds lease has unjustly enriched Defendants to the detriment of Plaintiffs and the Class.

59.    Plaintiffs and the Class have been injured due to Defendants' failure to pay Plaintiffs and the Class in accordance with the terms of the lease.

**COUNT IV:**
**DECEPTIVE TRADE PRACTICES**

60.    Plaintiffs hereby incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

61.    Plaintiffs and the Class have sustained actual financial loss due to the fact that Defendants have failed and continually fails to pay them in accordance with their gross proceeds oil and gas lease.

62.    Defendants engaged in unconscionable, false, and deceptive acts and practices in business by failing to comply with the terms of Plaintiffs' and the Class' gross proceeds oil and gas lease.

63.    Plaintiffs' and the Class' actual financial loss was proximately caused by

**Page 13 of 15**

Defendants' conduct.

## DEMAND FOR JURY TRIAL

64.    Under Rule 38(b) Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

respectfully requests the following relief:

A.    Determine this action be maintained as a class action under Rule 23 of the Arkansas Rules of Civil Procedure, appoint Plaintiffs as Class Representatives, and Plaintiffs' counsel as Class Counsel;

B.    Declaratory relief and supplemental relief under the Declaratory Judgments Act;

C.    Damages for breach of contract;

D.    Damages for unjust enrichment;

E.    Damages for deceptive trade practices;

F.    Costs, including reasonable attorneys' fees, as permitted by law; and

G.    Such other relief in law and equity, including without limitation, costs, pre-judgment interest, post-judgment interest, and any other relief to which Plaintiffs and Class may be entitled.

DATE: March 19, 2021                    Respectfully Submitted,

M. Edward Morgan, (AR #82111)
Nathan S. Morgan (AR#09269)
MORGAN LAW FIRM, P.A
244 Highway 65 North, Suite 5
Clinton, AR 72031-7085
(501) 745-4044 / fax: (501) 745-5358
Email: eddie@medwardmorgan.com
Email: nathan@morganlawfirmpa.com

Thomas P. Thrash (AR #80147)
Will Crowder (AR #03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: tomthrash@thrashlawfirmpa.com
Email: willcrowder@thrashlawfirmpa.com

*Attorneys for Plaintiffs*

# EXHIBIT NO. 1 –
## ORDER NO. 078A-2019-10 (July 23, 2020)

*Eubanks v. Flywheel Energy Production, LLC , et al.*
**In the Circuit Court of Van Buren County, Arkansas, Civil Division**

**PLAINTIFFS' CLASS ACTION COMPLAINT**

**PAGE 205**



**OIL & GAS
COMMISSION**

**ORDER NO. 078A-2019-10**                                          **July 23, 2020**

### STATEWIDE AREA
*Multiple Counties, Arkansas*

### REQUEST FOR DETERMINATION AND ORDERS

After due notice and public hearing in North Little Rock, Arkansas, on June 23, 2020, the Arkansas Oil and Gas Commission, in administering an orderly program of compliance and enforcement, has found the following facts and issued the following Order.

### FINDINGS OF FACT

From the evidence introduced at the hearing, the Arkansas Oil and Gas Commission (hereinafter referred to as "AOGC" or the "Commission") finds:

1. That, as a result of royalty owners' concerns expressed to Commission staff, the Director of the AOGC (the "Director") filed an application requesting a Determination and Orders regarding the post-production expenses being charged by Flywheel Energy Production, LLC ("Flywheel") against integrated interests.

2. That Flywheel is formerly known as Southwestern Energy Production (Fayetteville) LLC (and its previous corporate iterations, hereinafter "SWN").

3. That, in early 2019, Flywheel began deducting additional substantial post-production expenses against royalty owners integrated under the statutory authority of the Commission.

4. That, in 2019, Commission Staff asked Flywheel about its new approach to deducting post-production expenses.  In July 2019, Flywheel responded to Commission Staff's inquiry regarding the new post-production expenses now being charged against integrated interests and explained its legal position regarding Arkansas statutory law.

5. That Flywheel's position stated in its July 2019 response was counter to the course of dealing that had existed between Flywheel (f/k/a SWN) and royalty owners integrated under the statutory authority of the Commission from approximately 2006 to early 2019.

6. That from 2006 through early 2019, Flywheel (f/k/a SWN) paid royalties to integrated interests without deducting post-production costs, except for taxes, assessments, and true third-party costs.

7. That Flywheel is subject to the authority of the Commission.

8. That Arkansas Code Annotated section 15-72-304(a) applies to all integration orders, whenever the Commission's integration authority is invoked. Arkansas Code Annotated section 15-72-304(a) requires that integrations orders:

**PAGE 206**

ORDER NO. 078A-2019-10
July 23, 2020
Page 2 of 3

shall be made after notice and an opportunity for a hearing and shall be upon terms and conditions that are just and reasonable and that will afford the owner of each tract or interest in the drilling unit the opportunity to recover or receive his or her just and equitable share of the oil and gas in the pool without unnecessary expense and will prevent or minimize reasonably avoidable drainage from each developed unit which is not equalized by counter drainage.

9.  That the applicable portion of Arkansas Code Annotated section 15-72-305(a)(3) reads as follows:

    One-eighth (1/8) of all gas sold on or after the first day of the calendar month next ensuing after March 6, 1985, from any such unit shall be considered royalty gas, and the net proceeds received from the sale thereof shall be distributed to the owners of the marketable title in and to the leasehold royalty and royalty.

10. That the term "net proceeds" is undefined by statute, is currently open to more than one interpretation, and is ambiguous.

11. That the operative portion of the Integration Model Lease Form states:

    *"Lessee shall pay Lessor ____ (__) of the proceeds derived from the sale of all gas at the well (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas in an arm's length, non-affiliated transaction. In the event that the sale is to an Affiliate ("Affiliate" being defined as having a ten percent (10%) common ownership), then the proceeds derived from the sale of all gas shall be a price no less than that received from any other purchaser within the governmental township and range in which the lease is situated."*

12. That, as evidenced in the long-term course of dealing, the adoption of Model Forms, and the statements on the record at a prior Commission hearing in 192A-2014-06, Flywheel (f/k/a SWN) previously paid royalty to integrated interests without making post-production deductions except for taxes, assessments, and true third-party costs.

13. That, the Commission affirms its prior utilization and interpretation of the referenced statutes and Commission Model Forms in that post-production deductions for integrated royalty owners are prohibited, except for taxes, assessment, and true third-party costs.

14. That Alan Perkins appeared at the hearing on behalf of Flywheel.

## CONCLUSIONS OF LAW

1.  That due notice of the public hearing was given as required by law and that the Commission has jurisdiction over the parties and this matter.

2.  That the Commission has the authority to grant the application under the provisions of Act 105 of 1939, as amended.

**PAGE 207**

ORDER NO. 078A-2019-10
July 23, 2020
Page 3 of 3

<u>ORDER</u>

It is, therefore, ordered:

1. That the term "net proceeds" is undefined by statute, is open to more than one interpretation, and is resultantly ambiguous.

2. That, as evidenced in the long-term course of dealing, the adoption of Model Forms, and the statements on the record at a prior Commission hearing in 192A-2014-06, Flywheel, (f/k/a SWN), previously paid royalty to integrated interests without making post-production deductions except for taxes, assessments, and true third-party costs.

3. That, the Commission affirms its prior utilization and interpretation of the referenced statutes and Commission Model Forms in that post-production deductions for integrated royalty owners are prohibited, except for taxes, assessment, and true third-party costs.

4. That the effect of this Order may be stayed pending any appeal of this matter, conditioned upon Flywheel's escrowing the disputed funds in an interest-bearing account and regularly reporting the location, account number, and balance of the account.

This Order shall be effective from and after **July 23, 2020**; and the Commission shall have continuing jurisdiction for the purposes of enforcement, and/or modifications or amendments to the provisions of this Order.

ARKANSAS OIL AND GAS COMMISSION

Lawrence E. Bengal
Director, Arkansas Oil and Gas Commission

**PAGE 208**



**OIL & GAS
COMMISSION**

**ORDER NO. 078A-2019-10 (Corrected)**                                July 23, 2020

### STATEWIDE AREA
*Multiple Counties, Arkansas*

### REQUEST FOR DETERMINATION AND ORDERS

After due notice and public hearing in North Little Rock, Arkansas, on June 23, 2020, the Arkansas Oil and Gas Commission, in administering an orderly program of compliance and enforcement, has found the following facts and issued the following Order.

*Original Order No. 078A-2019-10 contained an error in Paragraph 2 of the Findings of Fact. This Corrected Order No. 078A-2019-10 is corrected to accurately state Flywheel Energy Production, LLC's former name. Given the nature of the error, this Order is issued with the same effective date of July 23, 2020.*

### FINDINGS OF FACT

From the evidence introduced at the hearing, the Arkansas Oil and Gas Commission (hereinafter referred to as "AOGC" or the "Commission") finds:

1. That, as a result of royalty owners' concerns expressed to Commission staff, the Director of the AOGC (the "Director") filed an application requesting a Determination and Orders regarding the post-production expenses being charged by Flywheel Energy Production, LLC ("Flywheel") against integrated interests.

2. That Flywheel is formerly known as Southwestern Energy Production (Arkansas) LLC (and its previous corporate iterations, hereinafter "SWN").

3. That, in early 2019, Flywheel began deducting additional substantial post-production expenses against royalty owners integrated under the statutory authority of the Commission.

4. That, in 2019, Commission Staff asked Flywheel about its new approach to deducting post-production expenses. In July 2019, Flywheel responded to Commission Staff's inquiry regarding the new post-production expenses now being charged against integrated interests and explained its legal position regarding Arkansas statutory law.

5. That Flywheel's position stated in its July 2019 response was counter to the course of dealing that had existed between Flywheel (f/k/a SWN) and royalty owners integrated under the statutory authority of the Commission from approximately 2006 to early 2019.

6. That from 2006 through early 2019, Flywheel (f/k/a SWN) paid royalties to integrated interests without deducting post-production costs, except for taxes, assessments, and true third-party costs.

7. That Flywheel is subject to the authority of the Commission.

ORDER NO. 078A-2019-10 (Corrected)
July 23, 2020
Page 2 of 3

8. That Arkansas Code Annotated section 15-72-304(a) applies to all integration orders, whenever the Commission's integration authority is invoked. Arkansas Code Annotated section 15-72-304(a) requires that integrations orders:

> shall be made after notice and an opportunity for a hearing and shall be upon terms and conditions that are just and reasonable and that will afford the owner of each tract or interest in the drilling unit the opportunity to recover or receive his or her just and equitable share of the oil and gas in the pool without unnecessary expense and will prevent or minimize reasonably avoidable drainage from each developed unit which is not equalized by counter drainage.

9. That the applicable portion of Arkansas Code Annotated section 15-72-305(a)(3) reads as follows:

> One-eighth (1/8) of all gas sold on or after the first day of the calendar month next ensuing after March 6, 1985, from any such unit shall be considered royalty gas, and the net proceeds received from the sale thereof shall be distributed to the owners of the marketable title in and to the leasehold royalty and royalty.

10. That the term "net proceeds" is undefined by statute, is currently open to more than one interpretation, and is ambiguous.

11. That the operative portion of the Integration Model Lease Form states:

> *"Lessee shall pay Lessor ___ (__) of the proceeds derived from the sale of all gas at the well (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas in an arm's length, non-affiliated transaction. In the event that the sale is to an Affiliate ("Affiliate" being defined as having a ten percent (10%) common ownership), then the proceeds derived from the sale of all gas shall be a price no less than that received from any other purchaser within the governmental township and range in which the lease is situated."*

12. That, as evidenced in the long-term course of dealing, the adoption of Model Forms, and the statements on the record at a prior Commission hearing in 192A-2014-06, Flywheel (f/k/a SWN) previously paid royalty to integrated interests without making post-production deductions except for taxes, assessments, and true third-party costs.

13. That, the Commission affirms its prior utilization and interpretation of the referenced statutes and Commission Model Forms in that post-production deductions for integrated royalty owners are prohibited, except for taxes, assessment, and true third-party costs.

14. That Alan Perkins appeared at the hearing on behalf of Flywheel.

## CONCLUSIONS OF LAW

1. That due notice of the public hearing was given as required by law and that the Commission has jurisdiction over the parties and this matter.

**PAGE 210**

ORDER NO. 078A-2019-10 (Corrected)
July 23, 2020
Page 3 of 3

    2.  That the Commission has the authority to grant the application under the provisions of Act 105 of 1939, as amended.

## ORDER

It is, therefore, ordered:

    1.  That the term "net proceeds" is undefined by statute, is open to more than one interpretation, and is resultantly ambiguous.

    2.  That, as evidenced in the long-term course of dealing, the adoption of Model Forms, and the statements on the record at a prior Commission hearing in 192A-2014-06, Flywheel, (f/k/a SWN), previously paid royalty to integrated interests without making post-production deductions except for taxes, assessments, and true third-party costs.

    3.  That, the Commission affirms its prior utilization and interpretation of the referenced statutes and Commission Model Forms in that post-production deductions for integrated royalty owners are prohibited, except for taxes, assessment, and true third-party costs.

    4.  That the effect of this Order may be stayed pending any appeal of this matter, conditioned upon Flywheel's escrowing the disputed funds in an interest-bearing account and regularly reporting the location, account number, and balance of the account.

This Order shall be effective from and after **July 23, 2020**; and the Commission shall have continuing jurisdiction for the purposes of enforcement, and/or modifications or amendments to the provisions of this Order.

ARKANSAS OIL AND GAS COMMISSION

Lawrence E. Bengal
Director, Arkansas Oil and Gas Commission

# EXHIBIT NO. 2 –
## Certificate of Conversion

*Eubanks v. Flywheel Energy Production, LLC, et al.*
**In the Circuit Court of Van Buren County, Arkansas, Civil Division**

**PLAINTIFFS' CLASS ACTION COMPLAINT**

Book 2019 Page 452

DOC: 2019-0452

## The State of Texas



David Whitley
Secretary of State

Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697

Phone: 512-463-5555
Fax: 512-463-5709
Dial 7-1-1 For Relay Services
www.sos.state.tx.us

Re: Original Documents

Dear Sir or Madam:

The attached certificate is an original certificate issued by the Secretary of State. Original certificates issued by the Secretary of State are electronically generated. Consequently, such original certificates are in black and white without gold or raised seals, and they bear the electronic signature of the named Secretary of State.

If you have any questions regarding this matter, please call me at 512-463-5578.

Very Truly Yours,

Deborah Rogers

Deborah Rogers
Certifying Team
Office of the Texas Secretary of State


EXHIBIT

Book 2019  Page 452.002

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Rolando B. Pablos
Secretary of State

## Office of the Secretary of State

### CERTIFICATE OF CONVERSION

The undersigned, as Secretary of State of Texas, hereby certifies that a filing instrument for

SWN Production (Arkansas), LLC
File Number: 802125617

Converting it to

Flywheel Energy Production, LLC
File Number: [Entity not of Record, Filing Number Not Available]

has been received in this office and has been found to conform to law. ACCORDINGLY, the
undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby
issues this certificate evidencing the acceptance and filing of the conversion on the date shown below.

Dated: 12/03/2018

Effective: 12/03/2018





Rolando B. Pablos
Secretary of State





CERTIFICATE OF RECORD
RB 2019-0452
VAN BUREN CO, AR FEE $30.00
RECORDED 2/11/2019 10:04:38 AM
DEBBIE BRAY CIRCUIT CLERK

Phone: (512) 463-5555
Prepared by: Lisa Sartin

*Come visit us on the internet at http://www.sos.state.tx.us/*
Fax: (512) 463-5709
TID: 10340

Dial: 7-1-1 for Relay Services
Document: 852882930002

Book 2019  Page 452.003

DOC: 2019-0452

F I L E D
In the Office of the
Secretary of State of Texas

DEC 03 2019

Corporations Section

### THE STATE OF TEXAS
### CERTIFICATE OF CONVERSION
### OF A TEXAS LIMITED LIABILITY COMPANY
### TO AN OKLAHOMA LIMITED LIABILITY COMPANY

### ARTICLE ONE
### CONVERTING ENTITY INFORMATION

The name of the converting entity is "SWN Production (Arkansas), LLC" (the "*Converting Entity*"). The Converting Entity was formed as a Texas limited liability company on December 29, 2014. The file number issued to the Converting Entity by the secretary of state is 802125617.

### ARTICLE TWO
### CONVERTED ENTITY INFORMATION

The Converting Entity is converting to an Oklahoma limited liability company (the "*Conversion*"). The name of the converted Oklahoma limited liability company will be "Flywheel Energy Production, LLC" (the "*Converted Entity*").

### ARTICLE THREE
### PLAN OF CONVERSION

A plan of conversion (the "*Plan of Conversion*") has been approved as required by the laws of the State of Texas, the governing documents of the Converting Entity and the laws of the State of Oklahoma, and is on file at the principal place of business of the Converting Entity at 3030 NW Expressway, Suite 1100, Oklahoma City, OK 73112. The Plan of Conversion shall remain on file at such address, which will be the principal place of business of the Converted Entity, following the Conversion. A copy of the Plan of Conversion will be furnished upon written request, without cost, by the Converting Entity before the Conversion or by the Converted Entity after the Conversion to any owner member of the Converting Entity or the Converted Entity.

### ARTICLE FOUR
### EFFECTIVENESS OF FILING

This Certificate of Conversion becomes effective upon filing.

### ARTICLE FIVE
### TAX CERTIFICATE

In lieu of providing a tax certificate, the Converted Entity shall be responsible for the payment of all fees and franchise and margin taxes as required by law and will be obligated to pay such fees and franchise and margin taxes if the same are not timely paid.

*[Signature Page Follows]*

US 5965755

Book 2019  Page 452.004

DOC: 2019-0452

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: December 3, 2018

SWN PRODUCTION (ARKANSAS), LLC

By:
Name:  Jeremy Fitzpatrick
Title:   Authorized Person

SIGNATURE PAGE TO CERTIFICATE OF CONVERSION
OF SWN PRODUCTION (ARKANSAS), LLC (TX)

# EXHIBIT NO. 3 –
## Plaintiffs' Oil and Gas Lease

*Eubanks v. Flywheel Energy Production, LLC, et al.*
**In the Circuit Court of Van Buren County, Arkansas, Civil Division**

**PLAINTIFFS' CLASS ACTION COMPLAINT**

CERTIFICATE OF RECORD
Doc# 200702702
Page #1
Date 03/19/2007
01:19:15 PM
Filed & Recorded in
Official Records of
STATE OF ARKANSAS
VAN BUREN COUNTY
ESTER BASS
CIRCUIT/COUNTY CLERK
Fee $26.00
BY:

# OIL AND GAS LEASE
## (Paid-up Lease—No Delay Rentals)

THIS AGREEMENT, made and entered into this _____15th_____ day of _____February_____ 2007, by and between Larry W. Eubanks and Carolyn D. Eubanks, husband and wife  of  412 Hillcrest, Heber Springs, Arkansas 72543  hereinafter called lessor (whether one or more),and  The Caffey Group LLC, 309 W. 7th Street, Suite 400, Fort Worth, Texas 76102  hereinafter called Lessee.

WITNESSETH Lessor, for and in consideration of _____TEN AND MORE_____ Dollars ($10.00) and other good and valuable consideration in hand paid, receipt of which is hereby acknowledged, and of the agreements of lessee hereinafter set forth, hereby grants, demises, leases and lets exclusively unto said lessee the lands hereinafter described for the purpose of prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas, or both, including, but not as a limitation, casinghead gas, casinghead gasoline, gas condensate (distillate) and any substance, whether similar or dissimilar, produced in a gaseous state, together with the right to construct and maintain pipe lines, telephone and electric lines, tanks, power stations, ponds, roadways, plants, equipment, and structures thereon to produce, save and take care of said oil and gas, and the exclusive right to inject air, gas, water, brine and other fluids from any source into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of air, gas, water, brine and other fluids into the subsurface strata, said lands being situated in the Counties of  Van Buren  , State of Arkansas, and being described as follows, to-wit:

### SEE EXHIBIT "A" FOR LEASE ADDENDUMS
### SEE EXHIBIT "B" FOR COMPLETE LEGAL DESCRIPTION

of Section ___1___ , Township __10 North__ , Range __14 West__ , it being the purpose and intent of lessor to lease, and lessor does hereby lease, all of the lands or interests in lands owned by lessor which adjoin the lands above described or which lie in the section or sections herein specified whether or not herein completely and accurately described together with and including any accretions thereto which may have formed, may now be forming or may hereafter form.  For all purposes of this lease, said lands shall be deemed to contain ___43.65___ acres in Van Buren County, Arkansas.

Subject to the other provisions herein contained, this lease shall remain in force for a term of  5  years from this date (herein called "primary term") and as long thereafter as oil and gas, or either of them is produced from the above described land or drilling operations are continuously prosecuted as hereafter provided.  "Drilling operations" includes operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or re-establish production of oil or gas, and drilling operations shall be considered to be "continuously prosecuted" if not more than 180 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole.  If, at the expiration of the primary term of this lease, oil or gas is not being produced from the above described land but lessee is then engaged in drilling operations, this lease shall continue in force so long as drilling operations are continuously prosecuted, and if production of oil or gas results from any such drilling operations, this lease shall continue in force so long as oil or gas shall be produced.  If, after the expiration of the primary term of this lease, production from the above described land should cease, this lease shall not terminate if lessee is then prosecuting drilling operations, or within 180 days after each such cessation of production commences drilling operations, and this lease shall remain in force so long as such operations are continuously prosecuted, and if productions results therefrom, then as long thereafter as oil or gas is produced from the above described land.

In consideration of the premises, lessee covenants and agrees:

1.    To deliver, free of cost, to lessor at the wells, or to the credit of lessor in the pipeline to which the wells may be connected, the equal one-sixth (1/6) part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or, at lessee's option, to pay to lessor for such one-sixth (1/6) royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease.

1

Doc# 200702702

2.    Lessee shall pay Lessor one-sixth (1/6) of the proceeds derived from the sale of all gas (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas. In calculating the proceeds derived from the sale of gas produced, saved and sold by Lessee, Lessee shall be entitled to deduct all reasonable gatherings, transportation, treatment, compression, processing and marketing costs that are incurred by Lessee in connection with the sale of such gas.

3.    The consideration paid to lessor for this lease includes consideration in lieu of delay rental provisions and the rights and obligations of the parties hereunder shall be the same as if this lease contained provisions for the payment of periodic delay rentals throughout the primary term hereof and each such delay rental had been timely paid and accepted by lessor.

4.    If a well capable of producing gas or gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises, into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this lease will continue in force during all of the time or times while such well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in lessee's judgment exercised in good faith, as unsatisfactory.  Lessee shall be obligated to pay or tender to lessor within 45 days after the expiration of each period of one year in length (annual period) during which such well is so shut in, as royalty, an amount equal to $1.00 per acre for the acreage covered by this lease as to which the leasehold rights are, at the end of such annual period, owned by the lessee making such payment, provided that, if lessor owns less than the full and entire royalty interest in such acreage, such payments shall be such part (calculated on a royalty-acre basis) of said amount as lessor's royalty interest bears to the full and entire royalty interest in such acreage, and provided further that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this lease is being maintained in force and effect otherwise than by reason of such shut-in well, lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money.  Such payment shall be deemed a royalty under all provisions of this lease.  Such payment ~~may be made or tendered to lessor or to lessor's credit in the~~ SHALL BE MADE DIRECTLY TO LESSOR ~~Bank at~~ ~~which bank and its successors shall continue as the depository regardless of changes in the ownership of said land or the right to receive royalty hereunder.~~  Royalty ownership as of the last day of each such annual period as shown by lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5.    If lessor owns a less interest in the land covered by this lease than the entire and undivided fee simple mineral estate therein, then whether or not such less interest is referred to or described herein, all royalties herein provided shall be paid lessor only in the proportion (calculated on a royalty-acre basis) which the royalty interest owned by him in said land bears to the full and entire royalty interest in said land.

6.    If the estate of either party hereto is assigned or sublet, and the privilege of assigning or subletting in whole or in part is expressly allowed, the express and implied covenants hereof shall extend to the sublessees successors and assigns of the parties, and in the event of an assignment or subletting by lessee, lessee shall be relieved and discharged as to the leasehold rights so assigned or sublet from any liability to lessor thereafter accruing upon any of the covenants or conditions of this lease, either express or implied.  No change in the ownership of the land or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee or require separate measuring or installation of separate tanks by lessee.  Notwithstanding any actual or constructive knowledge of or notice to lessee, no change in the ownership of said land or of the right to receive royalties hereunder, or of any interest therein, whether by reason of death, conveyance or any other matter, shall be binding on lessee (except at lessee's option in any particular case) until 90 days after lessee has been furnished written notice thereof, and the supporting information hereinafter referred to, by the party claiming as a result of such change in ownership or interest.  Such notice shall be supported by original or certified copies of all documents and other instruments or proceedings necessary in lessee's opinion to establish the ownership of the claiming party.

7.    Lessee may, at any time, execute and deliver to lessor or place of record a release covering all or any part of the acreage embraced in the leased premises or covering any one or more zones, formations or depths underlying all or any part of such acreage, and thereupon shall be relieved of all obligations thereafter to accrue with respect to the acreage, zones, formations or depths covered by such release.

8.    Lessee is granted the right, from time to time while this lease is in force, to pool into a separate drilling operating unit or units all or any part of the land covered by this lease with other land, lease or leases, or interests therein (whether such other interests are pooled by a voluntary agreement on the part of the owners therefore by the exercise of a right to pool by the lessees thereof), when in lessee's judgment it is necessary or advisable in order to promote conservation, to properly develop or operate the land and interest to be pooled, or to obtain a multiple production allowable from any government agency having control over such matters.  Moreover, if any governmental regulation or order shall permit or prescribe a spacing pattern for the development of a field wherein the above described land, or a portion thereof, is located, or allocate a producing allowable based on acreage per well, then any such unit may embrace such additional or lesser amount of acreage as may be so permitted or prescribed or as may be permitted such allocation of allowable. In lieu of the royalties elsewhere herein specified, except shut-in gas well royalties, lessor shall receive on production from an area so pooled only such portion of the royalties which, in the absence of such pooling, would be payable hereunder to lessor on production from the land covered by this lease which is placed in the pooled area as the amount of the surface acreage in the land covered by this lease which is placed in the pooled area bears to the amount of the surface acreage of the entire pooled area.  Nothing herein contained shall authorize or affect any transfer of any title to any leasehold, royalty or other interest pooled pursuant hereto.  The

2

Doc# 200702702

commencement of well, the conduct of other drilling operations, the completion of a well or of a dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except for royalty purposes) the same as if said well were located upon, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. Lessee may terminate any pooling effected pursuant hereto at any time the pooled unit is not producing and no drilling operations are being conducted thereupon by executing and filing of record in the county or counties in which the pooled area is located a written declaration of the termination of such pooling, provided that the pooling of all interests not covered by this lease which comprise a part of such pooled unit be also terminated in some effective manner.

9.    Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and remove all casing, but the Lessee shall be under no obligation to do so.

10.    Lessor hereby warrants and agrees to defend the title to the lands herein described, but if the interest of lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, lessor's warranty shall be limited to the interest so stated. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby but lessee shall not suffer any forfeiture nor incur any liability to lessor by reason thereof. Lessee shall have the right at any time to pay for lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment of lessor, and be subrogated to the rights of the holder thereof, and any such payments made by lessee for lessor may be deducted from any amounts of money which may become due lessor under this lease.

11.    In the event lessor considers that lessee is in breach of any of its obligations hereunder, lessor shall notify lessee in writing of the facts relied upon as constituting a breach hereof, and lessee, if in breach hereof, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this lease. Until such time as lessee has been given the above-described written notice and opportunity to cure the asserted breach, lessee shall not be considered in default under the terms of this lease.

12.    Should lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas therefrom by reason of scarcity of or inability to obtain or to use equipment or material, by operation of force majeure, by any Federal or state law or any order, rule or regulation of government authority, or by any other cause beyond the reasonable control of lessee, then while so prevented, lessee's obligation to comply with such covenant shall be suspended, and lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as lessee is so prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises; and the time while lessee is so prevented shall not be counted against lessee, anything in this lease to the contrary notwithstanding.

13.    This lease and all provisions thereof shall be applicable to, binding upon and enforceable by the parties thereto and their respective successors and assigns. Reference herein to lessor and lessee shall include reference to their respective successors and assigns, it being expressly agreed that lessor and lessee shall have the right to assign. Should any one or more of the parties named above as lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing the same.

14.    Each wife/husband above named hereby joins in the execution and delivery of this lease for the purpose of conveying, releasing and relinquishing unto lessee, for the purpose and consideration aforesaid, all of his/her right, title, interest and estate in said land, including any rights of dower/curtesy and homestead which he/she may have therein.

15. Lessee is hereby given the exclusive option and right to extend the primary term of this lease as to all or any part of the above-described lands for an additional 5 years, commencing with the expiration of the original primary term described above. This option may be exercised by Lessee at any time during the original primary term by paying to Lessor the sum of $___650.00___ per net mineral acre for each net mineral acre hereunder that is being extended by lessee and is not otherwise being maintained by other provisions hereof. Payment may be made by check or draft mailed, tendered or delivered to lessor at any time during the primary term hereof. If, at the time this payment is made, multiple parties are entitled to specific amounts according to Lessee's records; such payment may be divided between said parties and paid in the same proportions.

IN WITNESS WHEREOF, this lease is executed as of the day and year first above written.

Larry W. Eubanks                Carolyn D. Eubanks

3

Doc# 200702702

## Joint Acknowledgement – Arkansas

STATE OF _____Arkansas_____ §
                                                      §
COUNTY OF _____Van Buren_____ §

On this _____15th_____ day of _____February_____ 2007, before me the undersigned Notary Public in and for said County and State personally appeared _____Larry W. Eubanks and Carolyn D. Eubanks, husband and wife_____ known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged that they executed the same as their free and voluntary act and deed for the purpose and consideration therein mentioned and set forth.  IN WITNESS WHEREOF I have hereunto set my hand and official seal.

My Commission Expires _____

Brenda R. Isbell
Notary Public - Arkansas
Van Buren County
My Commission Exp. 1-10-2012

_____Brenda R. Isbell_____
Notary Public

4

Doc# 200702702

# Exhibit A - Addendum

**ATTACHED TO AND MADE AN ESSENTIAL PART OF THE CERTAIN OIL & GAS LEASE** entered into on the __15th__ day of ____February____, 2007, by and between _____Larry W. Eubanks and Carolyn D. Eubanks, husband and wife_____ ("Lessor") and The Caffey Group LLC ("Lessee").  It is the purpose and intent of this Addendum to control the provisions of said Oil & Gas Lease and to the extent the terms and provisions of this Addendum conflict with the provisions of said Oil & Gas Lease, the terms and provisions of this Addendum shall be paramount and controlling as to any conflict notwithstanding anything to the contrary in said Oil & Gas Lease.

1.     Lessor grants, leases, and lets exclusively to Lessee, its successors and assigns, the lands described in this Lease (the "leased premises") for the sole and only purpose of exploring by geophysical and other methods, and of drilling, producing and operating wells for the recovery of and operating for oil (including but not limited to distillate and condensate), gas (including casinghead gas and helium and all other constituents) and all other substances that may be produced through the bore of a well producing oil or gas on the leased premises, and for laying pipelines and building tanks, roads, power stations, and structures thereon, and to produce, save, transport, and take care of said products, together with the rights of ingress and egress to and from the lands subject to this Lease.

2.     Lessee covenants and agrees as follows with regard to royalty to be paid under the Lease:

A.    To deliver to the credit of Lessor the twenty percent (20%) part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises;

B.    To pay Lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, twenty percent (20%) of the gross proceeds received by Lessee for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than twenty percent (20%) of the actual amount received by Lessee, said payments to be made monthly;

C.    To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casinghead gasoline or dry commercial gas, twenty percent (20%) of the gross proceeds actually  received by Lessee for the gas during the time such gas shall be used, said payments to be made monthly;

D.    Lessee shall not deduct any costs or expenses from such gross proceeds except Lessor's pro rata share of any severance taxes that may become payable out of Lessor's share of gross production; and

E.    That all royalties, shut-in royalties, or other sums which may become payable to Lessor under the terms of this Lease may be paid or tendered by cash, check, draft, electronic funds transfer, or any other commercially reasonable method which Lessee may elect.

3.     Upon the expiration of the primary term, drilling or reworking operations on and the production of oil or gas from a pooled oil unit or a pooled gas unit formed pursuant to the provisions of this Lease will maintain this Lease only as to that portion of the leased premises located within the pooled unit from which production is being obtained.  This Lease may be maintained in effect as to all or part of the remainder of the leased premises only in accordance with the other applicable provisions of this Lease.

4.     If a well is shut-in as described in paragraph 4 of the Lease, Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year in length (annual period) during which such well is so shut-in, as royalty, an amount equal to one thousand dollars ($1,000) for each well so shut-in.  Upon the expiration of the primary term, this Lease shall not be continued in force solely under the provisions of the shut-in royalty clause for any continuous period more than three (3) years.

5.     Lessee agrees to pay Lessor reasonable compensation for surface damages caused by its operations including damages to growing crops, timber, and improvements on the lease premises.

6.     Lessee shall notify Lessor in writing and shall consult with Lessor prior to final selection of any drilling site, and shall consult with Lessor prior to the placement of any tanks, pipelines, or lease roads necessitated by Lessee's operations on the property.

7.     Lessee shall not have the right at any time to use fresh water from or located in any well, pond, irrigation ditch, tank, lake, or reservoir located on the lands without the prior written consent of Lessor.

5

Doc# 200702702

**ATTACHED TO AND MADE AN ESSENTIAL PART OF THE CERTAIN OIL & GAS LEASE** entered into on the 15th day of February , 2007, by and between Larry W. Eubanks and Carolyn D. Eubanks, husband and wife ("Lessor") and The Caffey Group LLC ("Lessee"). It is the purpose and intent of this Addendum to control the provisions of said Oil & Gas Lease and to the extent the terms and provisions of this Addendum conflict with the provisions of said Oil & Gas Lease, the terms and provisions of this Addendum shall be paramount and controlling as to any conflict notwithstanding anything to the contrary in said Oil & Gas Lease.

8. No well shall be drilled nearer than four hundred (400) feet to any dwelling or other occupied structure without Lessor's written consent.

9. Lessee shall indemnify and hold Lessor harmless from any and all liability, liens, demands, and environmental liability arising out of and directly resulting from Lessee's operation on said land and conducted under the terms of this lease.

10. Upon cessation of production, the leased premises shall be restored as near as practicable to the condition it was in before any operations were commenced by Lessee.

11. Lessee, its assigns, contractors, and subcontractors agree to comply with all applicable rules and regulations of the Arkansas Oil & Gas Commission and the Arkansas Department of Environmental Quality with respect to the leased premises.

12. All pipelines shall be buried and maintained at least thirty-six (36) inches deep so farming and ranching operations may be safely performed.

13. Within 180 days after the termination of Lessee's operations on the leased premises, Lessee shall remove all machinery, fixtures, and other structures placed on the surface of the leased premises by Lessee. If Lessee does not remove said structures within 180 days after termination of Lessee's operations, Lessor may cause such property to be removed at Lessee's expense. Notwithstanding the foregoing, after cessation of Lessee's use of any water well which may be drilled by Lessee on the leased premises, and prior to plugging or removing the casing of any such water well, Lessee shall tender such water well to the Lessor, and if the Lessor elects in a timely manner to accept same, such water well shall be and become the property of the Lessor.

**SIGNED FOR IDENTIFICATION:**


_Larry W. Eubanks_
Larry W. Eubanks


_Carolyn D. Eubanks_
Carolyn D. Eubanks

Doc# 200702702

# EXHIBIT B

**ATTACHED TO AND MADE AN ESSENTIAL PART OF THE CERTAIN OIL & GAS LEASE** entered into on the 15th day of February, 2007, by and between __Larry W. Eubanks and Carolyn D. Eubanks, husband and wife__ ("Lessor") and The Caffey Group LLC ("Lessee").

## Legal Description:

*39.84 ACRES, MORE OR LESS, BEING THE FRACTIONAL SOUTHWEST QUARTER OF THE NORTHEAST QUARTER (FRL. SW¼ NE¼);*

*AND*

*1.00 ACRE, MORE OR LESS, BEING PART OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER (PT. NE¼ SE¼), DESCRIBED AS; BEGINNING AT THE NORTHWEST CORNER OF SAID NE¼ SE¼ AND RUN THENCE SOUTH 55 YARDS TO A POINT, THENCE EAST 85 YARDS TO A POINT, THENCE NORTH 55 YARDS TO A POINT, AND THENCE WEST 85 YARDS TO THE POINT OF BEGINNING;*

*AND*

*5.00 ACRES, MORE OR LESS, BEING PART OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER (PT. NW¼ SE¼) DESCRIBED AS BEGINNING AT THE NORTHWEST CORNER OF SAID NW¼ SE¼, AND RUN THENCE SOUTH 55 YARDS TO A POINT, THENCE EAST ¼ MILE TO EAST LINE OF SAID NW¼ SE¼, THENCE NORTH 55 YARDS TO THE NORTHEAST CORNER OF SAID NW¼ SE¼, AND THENCE WEST ¼ MILE TO THE POINT OF BEGINNING;*

*AND*

*1.16 ACRES, MORE OR LESS, BEING PART OF THE FRACTIONAL SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (PT. FRL. SE¼ NE¼), DESCRIBED AS BEGINNING AT THE SOUTHWEST CORNER OF SAID SE¼ NE¼, AND RUN THENCE EAST 85 YARDS TO A POINT, THENCE NORTHWESTERLY 165 YARDS TO THE WEST LINE OF SAID SE¼ NE¼ AT A POINT 138 YARDS NORTH OF THE SOUTHEAST CORNER AND THENCE SOUTH 165 YARDS TO POINT OF BEGINNING. ALL IN SECTION 1, TOWNSHIP 10 NORTH, RANGE 14 WEST; VAN BUREN COUNTY, ARKANSAS;*

***LESS AND EXCEPT:*** *PART OF THE N½ SE¼ SECTION 1, T-10-N, R-14-W, VAN BUREN COUNTY, ARKANSAS, BEING THAT PART OF NORTH 165 FEET OF NW¼ SE¼ AND THAT PART OF NORTH 165 FEET OF THE WEST 255 FEET OF NE¼ SE¼, WHICH LIES EAST AND SOUTH OF AN OLD WIRE FENCE, MORE PARTICULARLY DESCRIBED AS:  STARTING AT A STONE MONUMENT AT THE CENTER OF SECTION 1, T-10-N, R-14-W, THENCE SOUTH 01°46'31" WEST, ALONG THE WEST LINE OF NW¼ SE¼, A DISTANCE 65.82 FEET TO A POINT ON THE WESTERLY PROJECTION OF AN OLD WIRE FENCE, THENCE SOUTH 88°43'04" EAST A DISTANCE OF 6.85 FEET TO A FENCE CORNER, FENCES NORTHERLY, SOUTHERLY AND EASTERLY, THE POINT OF BEGINNING OF THE LANDS HEREIN DESCRIBED, THENCE SOUTH 88°43'04" EAST, ALONG SAID WIRE FENCE, A DISTANCE OF 658.06 FEET, TO A POINT ON FENCE, THENCE CONTINUING ALONG SAID FENCE, SOUTH 88°32'42" EAST A DISTANCE OF 636.57 FEET TO A POINT ON SAID FENCE, THENCE CONTINUING ALONG SAID FENCE AND ITS PROJECTION, SOUTH 88°30'55" EAST A DISTANCE OF 265.24 FEET OR TO A POINT WHICH IS 255 FEET EAST OF WEST LINE OF NE¼ SE¼, THENCE SOUTH 01°36'45" WEST, PARALLEL TO THE SAID WESTLINE OF NE¼ SE¼, A DISTANCE OF 86.68 FEET OR TO A POINT WHICH IS 165 FEET SOUTH OF NORTH LINE OF SAID NE¼ SE¼, THENCE NORTH 89°04'14" WEST, PARALLEL TO AND 165 FEET SOUTH OF THE NORTH LINE OF SE¼, A DISTANCE OF 1556.35 FEET OR TO A POINT ON AN OLD WIRE FENCE, THENCE NORTH 00°28'39" WEST, ALONG SAID FENCE, A DISTANCE  OF 99.16 FEET TO THE POINT OF BEGINNING, BEING 2.83 ACRES IN NW¼ SE¼, 0.52 ACRES IN NE¼ SE¼, AND CONTAINING 3.35 ACRES.*

7

Please return to: Annie Dean
The Caffey Group, LLC
309 West 7th Street, Suite 400
Fort Worth, TX 76102