**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | |
|---|---|
| **GLENDON BRYANT, Individually and on Behalf of a Class of Similarly Situated Individuals;** | **PLAINTIFF** |
| **v.**          CASE NO. 4:20-cv-01147-LPR | |
| **FLYWHEEL ENERGY PRODUCTION, LLC, An Oklahoma Limited Liability Company;** | **DEFENDANT** |
| **DARRELL OLIGER AND CAROL OLIGER, CO-TRUSTEES OF THE DARRELL AND CAROL OLIGER REVOCABLE TRUST DATED JUNE 19, 2007, PULOMA PROPERTIES, LLC, and LGTD INVESTMENTS, LLC, Individually and on behalf of all others similarly situated** | **PLAINTIFFS** |
| **vs.**          CASE NO. 4:20-cv-01146-LPR | |
| **FLYWHEEL ENERGY PRODUCTION, LLC** | **DEFENDANT** |
| **GARY FLOWERS AND DEBBIE FLOWERS, individually and on behalf of all others similarly situated,** | **PLAINTIFFS** |
| **v.**          CASE NO. 4:21-cv-330-KGB | |
| **FLYWHEEL ENERGY PRODUCTION, LLC; MERIT ENERGY COMPANY, LLC; and RIVERBEND OIL & GAS VII, LLC** | **DEFENDANTS** |
| **LARRY W. EUBANKS AND CAROLYN D. EUBANKS, Individually and on behalf of all others similarly situated** | **PLAINTIFFS** |
| **vs.**          CASE NO. 4:21-cv-329-LPR | |
| **FLYWHEEL ENERGY PRODUCTION, LLC; XTO ENERGY, INC.** | **DEFENDANTS** |

1

## DEFENDANT FLYWHEEL ENERGY PRODUCTION, LLC'S
## BRIEF IN SUPPORT OF ITS MOTION FOR CONSOLIDATION

Comes now Defendant, Flywheel Energy Production, LLC, and provides this brief in support of its Motion for Consolidation:

### I.  OVERVIEW

Flywheel Energy Production, LLC is a working interest owner (lessee) and operator of thousands of natural gas wells in the Fayetteville Shale. Along with Flywheel, there are other working interest owners and operators in the Shale, companies like Merit Energy Company, LLC, Riverbend Oil & Gas VII, LLC, and XTO Energy, Inc., but Flywheel operates the largest number of wells. As operator, Flywheel has oil and gas leases with mineral owners (lessors) within the Shale which allow Flywheel to extract natural gas and sell it. In exchange, Flywheel sends applicable lessors a percentage of what it makes selling the gas, called a royalty payment.

A few of these lessors have banded together, in four different class actions, to sue Flywheel and the others.  These lessors say that Flywheel is improperly deducting expenses from the "first 1/8th" royalty payment and it shouldn't be.  Across the four class actions, Plaintiffs collectively allege in one form or another, that the deductions amount to breach of contract, unjust enrichment, and deceptive trade practices.  There are a few particulars to each class action, but on the whole these class actions all center on whether Flywheel can deduct expenses from the statutory first 1/8th royalty.  Flywheel maintains that it can because the statutory system, designed to aggregate and uniformly pay a blended royalty to all royalty owners for the first 1/8th portion, explicitly allows deductions.  *See* ARK. CODE ANN. § 15-72-305(a)(3) (referencing "net proceeds").

The question of whether Flywheel can deduct expenses per Arkansas law is the deep issue. All four class actions center around it, and Plaintiffs do not need four independent class actions to litigate it.  Therefore, these four class actions should be consolidated.

## II.  CONSOLIDATION STANDARD

The Court has "substantial discretion" in determining whether and to what extent similar cases should be consolidated.  *Hall v. Hall,* 138 S.Ct. 1118, 1131 (2018).  Consolidation doesn't merge one case into another.  *U.S. v. Altman,* 750 F.2d 684, 695 (8th Cir. 1984).  Instead, it brings together similar cases for convenience and judicial economy.  *Clark v. Arkansas Steel Associates, LLC,* No. 1:15-cv-92, 2017 WL 58585 at *1 (E.D. Ark. January 5, 2017) (Homes, J.).   The threshold question, under Rule 42, is whether the cases involve a common question of law or fact.  *Id.*; FED. R. CIV. P. 42(a).  If so, then the Court balances: (1) the saving of time and effort that consolidation produces; against (2) any expenses, delay, or inconvenience that consolidation would cause for the parties and the trial judge.  *Clark,* 2017 WL 58585 at *1 (internal citations omitted).  The balance here tilts towards consolidation.

## III.  THE FOUR CLASS ACTIONS

There are four class actions involved here:

*Glendon Bryant, individually and on behalf of a class of similarly situated individuals v. Flywheel Energy Production, LLC, an Oklahoma limited liability company (Case No. 4:20-cv-01147-LPR) ("Bryant");*

*Darrell Oliger and Carol Oliger, Co-Trustees of the Darrell and Carol Oliger Revocable Trust Dated June 19, 2007, Puloma Properties, LLC, and LGTD Investments, LLC, individually and on behalf of all others similarly situated v. Flywheel Energy Production, LLC (Case No. 4:20-cv-01146-LPR) ("Oliger");*

*Gary Flowers and Debbie Flowers, individually and on behalf of all others similarly situated v. Flywheel Energy Production, LLC, Merit Energy Company, LLC, and Riverbend Oil & Gas VII, LLC (Case No. 4:21-cv-330-KGB) ("Flowers")*; and

*Larry W. Eubanks and Carolyn D. Eubanks, individually and on behalf of all others similarly situated v. Flywheel Energy Production, LLC, and XTO Energy, Inc. (Case No. 4:21-cv-329-LPR) ("Eubanks").*[1]

---

[1] Due to the many cases, docket citations to the various cases will be noted with the case name first followed by the docket cite, by way of example:  *Bryant Doc. 1*; *Eubanks Doc. 2.*

The claims in these cases vary from simple—breach of contract, to complex—Arkansas law is unconstitutional.  The below chart summarizes the overlap between the cases:

| | | Bryant v. Flywheel | Oliger, et al. v Flywheel | Flowers v Flywheel, et al. | Eubanks v Flywheel, et al. |
|---|---|---|---|---|---|
| **Court's Basis For Jurisdiction** | Class Action Fairness Act | X | X | X | X |
| | Federal Question | | X | X | X |
| **Claims** | Breach of Contract | X | X | X | X |
| | Unjust Enrichment | | X | X | X |
| | Deceptive Trade Practices | | X | X | X |
| | Declaratory Relief | | X | X | X |
| | Federal Unconstitutional Takings | | X | X | X |
| **Common Questions of Law** | Does Ark. Code Ann. § 15-72-305 require Flywheel to deduct costs on the first 1/8th royalty? | X | X | X | X |
| | Does the requirement to take deductions under Ark. Code Ann. § 15-72-305 amount to a federal unconstitutional taking? | | X | X | X |
| | Does the Court need to declare Ark. Code Ann. § 15-72-305 unconstitutional? | | X | X | X |
| | Were Flywheel and others' acts a violation of Arkansas's Deceptive Trade Practices Act? | | X | X | X |
| | Has Flywheel been unjustly enriched? | | X | X | X |
| **Common Questions of Fact** | Involves natural gas leases within the Fayetteville Shale | X | X | X | X |
| | Involves leases with gross royalty provisions | X | X | X | X |
| | Involves leases where Flywheel takes deductions on the first 1/8th royalty payment | X | X | X | X |
| | Involves leases with Flywheel as operator | X | X | X | X |
| | Involves leases with Flywheel as leaseholder or assignee | X | X | | |

*Byrant Doc. 2 & 3; Oliger Doc. 34; Flowers Doc. 2; Eubanks Doc. 2.*

As the chart shows, the overlap between the cases' claims, facts, and questions of law are substantial, with some differences on the margins.

With this broad overview, Flywheel turns to a few specifics regarding the commonality between the Complaints' claims, facts, and classes:

**Breach of Contract and Unjust Enrichment.**  The claims and factual allegations for breach of contract and unjust enrichment are essentially identical between complaints:

- "Flywheel is obligated to pay royalties to Bryant and . . . has breached the Class Royalty Agreements . . . ." *Bryant Doc. 2* at 5.

- "Defendant failed to pay Plaintiffs and the Class in accordance with the gross oil and gas lease." *Oliger Doc. 34* at 12.

- "Defendants failure to pay in accordance with the terms of Plaintiffs' and the Class' gross proceeds lease has unjustly enriched Defendants . . . ." *Flowers Doc. 2* at 13.

- "Defendants failed to pay Plaintiffs and the Class in accordance with the gross proceeds oil and gas lease." *Eubanks Doc. 2* at 13.

**Declaratory Relief.**  The complaints claiming declaratory relief ask for it in identical language:

- "If Ark. Code Ann § 15-72-305 is interpreted or applied to prohibit or to override gross proceed leases, then that interpretation or application is an unconstitutional taking . . . in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution." *Oliger Doc. 34* at 11.

- "If Ark. Code Ann § 15-72-305 is interpreted or applied to prohibit or to override gross proceed leases, then that interpretation or application is an unconstitutional taking . . . in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution." *Flowers Doc. 2* at 11.

- "If Ark. Code Ann § 15-72-305 is interpreted or applied to prohibit or to override gross proceed leases, then that interpretation or application is an unconstitutional taking . . . in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution." *Eubanks Doc. 2* at 11.

**Factual Allegations Generally.**  The factual allegations between all four complaints are a retelling of the same tale:

- "Under the applicable royalty provision in the Bryant Lease and the Class Royalty Agreements, Flywheel has an obligation to pay royalties to the Plaintiffs

5

and the Class based upon the gross proceeds . . . without the deduction of post-production costs. . . . Flywheel has consistently breached its royalty payment obligations . . . ." *Bryant Doc. 2* at 3–4.

- "Upon information and belief, on or about May 1, 2019, FLYWHEEL PRODUCTION became obligated to make royalty payments to Plaintiffs and Class based upon said **gross proceeds** oil and gases leases . . . FLYWHEEL PRODUCTION failed and is failing to pay proper royalty payments due to an improper understanding of Arkansas code Ann. § 15-72-305." *Oliger Doc. 34* at 5–6 (emphasis original).

- "Upon information and belief, on or about May 1, 2019, FLYWHEEL PRODUCTION became obligated to make royalty payments to Plaintiff and Class based on its obligation . . . FLYWHEEL PRODUCTION is unlawfully taking post-production deductions from Plaintiffs and Class." *Flowers Doc. 2* at 5–6.

- "Upon information and belief, on or about May 1, 2019, FLYWHEEL PRODUCTION became obligated to make royalty payments to Plaintiff and Class based on its obligation . . . FLYWHEEL PRODUCTION is unlawfully taking post-production deductions from Plaintiffs and Class." *Eubanks Doc. 2* at 5–6.

**Common Class Questions.** There are a few marginal differences between the make-up of the classes, but they are all asking the same thing—does Flywheel get to deduct expenses, thereby paying net proceeds, not gross:

- "Whether Flywheel has a common royalty payment obligation to the named Plaintiffs and the Class members under the Class Royalty Agreements to pay them royalties based upon the sales gross proceeds received on the sale of natural gas to an unaffiliated third-party, without deduction of post-production costs[?]" *Bryant Doc. 2* at 4–5.

- "Did Defendant calculate royalty payments for the first 1/8 royalty due based on 'net proceeds,' not 'gross proceeds' without regard to the underlying lease terms?" *Oliger Doc. 34* at 8.

- "Did FLYWHEEL PRODUCTION calculate royalty payments for the first 1/8 royalty due based on 'net proceeds,' not 'gross proceeds' without regard to the underlying lease terms?" *Flowers Doc. 2* at 8–9.

- "Did FLYWHEEL PRODUCTION calculate royalty payments for the first 1/8 royalty due based on 'net proceeds,' not 'gross proceeds' without regard to the underlying lease terms?" *Eubanks Doc. 2* at 8.

These common questions about deductions, net versus gross, and the statutory 1/8th royalty all boil down to the same deep legal issue:  can Flywheel deduct expenses from the first 1/8th

royalty payment, regardless of lease type, pursuant to ARK. CODE ANN. § 15-72-305.  Each of the four class actions center around this question.  If the Court rules as a matter of law in one case that Flywheel can make these deductions, then the Plaintiffs in the other three cases are precluded from arguing otherwise.  But the opposite is also true: if the ultimate result is that Flywheel cannot legally deduct such expenses, then Flywheel will have to abide by that, cease making deductions determined to be unlawful, and make up for any past improper deductions . . . and that will resolve each of the cases.

Opposing counsels may try to muddy the waters about how their case is somehow special or different based on structure, parties, or lease type, but the Court shouldn't be led astray—regardless of certain particularities, they all come down to an interpretation of an Arkansas statute and consolidation is needed.

## IV.  CONSOLIDATING CLASS ACTIONS

Consolidation doesn't merge one case into another, change parties' rights, or change a party's respective claims.  *Altman,* 750 F.2d at 695.  Instead, each case retains its separate identity and the actions are consolidated "as a matter of convenience and economy in administration[.]" *Hall,* 138 S.Ct. at 1127.  How a consolidated case is structured is ultimately up to the Court, but Flywheel will use federal case law involving consolidated class actions to argue for consolidation of these cases, as well as to guide the Court in fashioning a consolidated structure.

The most common and frequent occurrence of consolidating class actions is in securities litigation.  Flywheel recognizes these class actions aren't about securities fraud, but the rationale in securities cases and the ability to consolidate class actions pursuant to Rule 42 are instructive here.

**Consolidated Class Action Cases**

In *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.,* the Court consolidated five class actions that involved the same primary defendants, same core facts, and same claims under federal securities law.  229 F.R.D. 395, 402 (S.D.N.Y. 2004).  The Court noted that the presences of a certain defendant in one class action, but not the others, did not stop consolidation.  *Id.*  And although the proposed classes had minor differences, consolidation was still warranted.  *Id.*  The Court consolidated the five class actions in to an "*In re* style" case, appointed co-lead plaintiffs, and appointed lead counsel.  *Id.* at 421.  The rationale and result in *Pirelli* have been adopted by district courts in the Eighth Circuit.  *See Bendzak v. Midland Nat. Life Ins. Co.,* 240 F.R.D. 449 (S.D. Iowa 2007).

In *Bendzak*, the Court consolidated two non-securities fraud class actions that asserted RICO and state law claims.  240 F.R.D. at 450–51.  The Court used *Pirelli* as support for consolidating the class actions even though the class actions involved two different defendants because the class actions ultimately involved the "same set of operative facts[.]" *Id.*  The overlap in facts included: (1) both complaints had the same nine common questions of law and fact; (2) the time period was the same; and (3) the complaints were identical.  *Id.*  The Court didn't have to appoint a lead plaintiff or counsel because it was the same plaintiff in both class actions.  *Id.*

Lastly, in *Banks v. Bunge North America*, this Court granted a motion to consolidate which brought together a traditional civil action and a class action.  No. 5:08-cv-152-BSM, 2008 WL 4495692 at *1 (E.D. Ark. Oct. 7, 2008) (Miller, J.).  The Court granted the consolidation because: (1) the deep issue for both cases was the same—did Defendant discriminate against Plaintiffs; and (2) discovery conducted in one case would be helpful in the other.  *Id.*  The efficiencies for the parties and the Court outweighed any inconveniences.  *Id.*

**Consolidating this Royalty Litigation**

Like in *Pirelli*, *Bendzak*, and *Banks*, consolidating these class actions into a consolidated action is necessary because of the overwhelming common questions of fact and law, mainly whether ARK. CODE ANN. § 15-72-305 allows for deductions.  Based on these cases, Flywheel asserts that the best fit for these cases is: a consolidated class action styled "*In re Fayetteville Shale Royalty Ligation*," which will be consolidated for all matters, with sole lead counsel, co-lead plaintiffs, and subclasses (if necessary), to account for particular leases and class action structure.

*In re* **Style.**  As in *Pirelli*, the "*In re* style" case would be best because it would consolidate these actions into a single docket, allowing for all plaintiffs and defendants to be aware of deadlines, current motions, and any pending legal arguments.  The advantages are: (1) all parties would have the opportunity to be heard regarding legal arguments; (2) a ruling of law by the Court in the *In re* case would bind all class actions in one-fell-swoop; (3) as in *Banks*, discovery in one case will be helpful to the other cases in the *In re* case; and (4) it would create a place for filing or removing any future federal litigation that may pop up.[2]  These advantages decrease expenses, delays, and inconveniences for the parties, while increasing efficiency for the Court in its ability to oversee all these cases.  *Clark,* 2017 WL 58585 at *1

**Lead Counsel.**  Appointing lead counsel usually happens around class certification time, but, in consolidated class actions, courts have appointed lead or co-lead counsel at the time of consolidation.  *See Pirelli,* 229 F.R.D. at 421.  Flywheel argues that such a determination is best left to Plaintiffs' firms—Barton & Burrows and the Thrash Law Firm / Morgan Law Firm—to brief and argue to the Court.  Flywheel doesn't have a dog in that fight, but it would note for the

---

[2] Regarding future litigation, there are currently two lawsuits against XTO Energy, Inc. about royalty deductions and ARK. CODE ANN. § 15-72-305.  One case is still in state court and the other is before this Court in *Bradley et al. v. XTO Energy, Inc.,* No. 3:21-cv-79-BSM.  This brings the total count of cases before this Court to five class actions.

9

Court that: (1) having a lead counsel over the consolidated action would be most efficient for all parties and (2) Flywheel's counsel continues to have a good working relationship with each of the Plaintiffs' firms.  At bottom, Flywheel requests that the Court appoint a lead counsel shortly after consolidation, if it is granted.

**Lead Co-Plaintiffs.**  Flywheel is fine with the current plaintiffs—Bryant, the Oligers, Puloma Properties, LGTD Investments, the Flowers, and the Eubanks—maintaining their position as plaintiffs and becoming co-plaintiffs of the consolidated action.  Their presence as co-plaintiffs will allow for collaboration, diversity of perspective, and fair representation of the various leases and lease holders being represented in this consolidated action.  This structure will also help maintain their rights as parties, and keep these cases from being merged into one another.  *See Hall,* 138 S.Ct. at 1127 & 1130.

**Practical Effects of Consolidation.**  Lastly, Flywheel asserts that the *In re* style case is the best fit for these cases; but at a minimum, and in the alternative, the discovery for these cases should be consolidated.  There is a current and practical example to highlight why.  Counsel for the *Bryant* class action has informed Flywheel's counsel that it plans to notice a 30(b)(6) deposition of Flywheel and its representative(s), which in reality will be a series of depositions of multiple company officials.  Without consolidated discovery, these representative(s) will have to sit for a deposition four times, for four different cases, just to rehash the same facts.  And although Flywheel is a large operator, it isn't entitled to any less protection from wasting its employees' time and resources.

## V.  CONCLUSION

The efficiency and benefits created by consolidating these cases outweigh any potential inconveniences for the parties or the Court.  *Clark,* 2017 WL 58585 at *1.  Consolidation of these cases would further serve the same essential purposes that class actions are designed to serve:

(1) to facilitate judicial economy by avoiding multiple suits on the same subject matter, *American Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 550, 94 S.Ct. 756, 764–65, 38 L.Ed.2d 713 (1974); (2) to provide a feasible and economical means for asserting the rights of plaintiffs with or without the resources to press individual claims, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965, 2973, 86 L.Ed.2d 628 (1985); and (3) to deter inconsistent results, assure uniformity, and make a singular determination of common rights and liabilities.  *First Federal of Michigan v. Barrow*, 878 F.2d 912, 919 (6th Cir.1989).

WHEREFORE, Defendant, Flywheel Energy Production, LLC, respectfully requests that the above-styled cases be consolidated into *In re Fayetteville Shale Royalty Litigation*, for the Court to re-issue a single scheduling order for the consolidated action, appoint lead counsel over this consolidated class action, and name co-lead plaintiffs.  In the alternative, Defendant Flywheel requests that the above-styled cases be consolidated as to discovery deadlines and lead counsel.

Respectfully Submitted,

G. Alan Perkins, AR Bar #91115
Julie Greathouse AR Bar #99159
M. Christine Dillard, AR Bar #2019161
Samuel S. McLelland, AR Bar #2020101
*Attorneys for Defendant*
**PPGMR Law, PLLC**
P.O. Box 3446
Little Rock, AR 72203
Telephone: (501) 603-9000
Facsimile: (501) 603-0556
E-mail: alan@ppgmrlaw.com
        julie@ppgmrlaw.com
        christine@ppgmrlaw.com
        sam@ppgmrlaw.com