## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**LARRY W. EUBANKS AND CAROLYN D.
EUBANKS, individually and on behalf of all
others similarly situated**                                         **PLAINTIFFS**

**v.**                              **Case No. 4:21-cv-00329-LPR**

**FLYWHEEL ENERGY PRODUCTION, LLC,
and XTO ENTERGY, INC.**
                                                    **DEFENDANTS**

---

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL

---

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ......................................................... iii

I.   INTRODUCTION ................................................................. 3

II.  LEGAL STANDARD ............................................................ 4

III. FACTUAL BACKGROUND ................................................... 7

    A.   Flywheel's Uniform Royalty Payment Practices ................. 7

IV.  ARGUMENT ...................................................................... 9

    A.   Plaintiffs have met their burden of satisfying Rule 23(a)'s Requirements (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. ................................................................. 10

        1.   Numerosity. .................................................................. 10

        2.   Commonality. ............................................................... 12

        3.   Typicality. .................................................................... 15

        4.   Adequacy. .................................................................... 17

    B.   Plaintiffs Satisfy Rule 23(b)(3) ....................................... 18

        1.   Common Questions of Law and Fact Predominate. ......... 18

        2.   A Class Action is Superior to Any Other Method of Adjucating These Claims ................................................. 19

    C.   Plaintiffs Satisfy Rule 23(b)(2) ....................................... 23

V.   NOTICE ............................................................................ 23

**VI.   CLASS DEFINITION**..................................................................................... **24**

    **ACTUAL AMOUNT RECEIVED ROYALTY CLAUSE**Error! Bookmark not defined.

    **NO DEDUCTION, NO COST CLAUSES** ..... Error! Bookmark not defined.

    **GROSS PROCEEDS CLAUSE** ...................... Error! Bookmark not defined.

**VII.  CONCLUSION**............................................................................................... **28**

## TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231,
138 L. Ed. 2d 689 (1997). ...................................................................... 19, 21

*Amgen Inc. v. Conn. Ret. Plans & Trust Fundings*, 568 U.S. 455,
133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) .................................................... 6

*Arkansas Louisiana Gas Co. v. Morris*, 294 Ark. 496,
744 S.W.2d 709 (Ark. 1988) ................................................................ 14, 16

*Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 764500
(W.D. Okla. April 20, 2009) .......................................................................... 16

*Bodcaw Oil Co., Inc. v. Atlantic Refining Co.*, 217 Ark. 50,
228 S.W.2d 626 (1950). ................................................................................ 15

*Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870 (N.D. Iowa 2008)..... 20, 22

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) .......................... 23

*Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990) ................................. 17

*Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 683 (E.D. Okla. Oct. 3, 2019)...... 14

*Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. 02-1236 RHK/AJB,
2003 WL 1955169 (D. Minn. Apr. 21, 2003) ................................................. 6

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543 (W.D. Mo. 2014) ............. 11

*Freebird, Inc. v. Merit Energy Co.*, Civil Action No. 10-1154-KHV-JPO,
2011 WL 13638 (D. Kan. Jan. 4, 2011) ...................................................... 17

*Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 100 S. Ct. 1698,
64 L. Ed. 2d 319 (1980) ................................................................................ 5

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.2d 402 (6th Cir. 2012)................. 14

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ......................... 25

*Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003) .................... 22

*Hanna Oil v. Taylor*, 759 S.W.2d 563, 565 (Ark. 1988)....................................... 15

*Hill v. Kaiser-Francis-Oil Co.*, No. CIV-09-07-R,
    2010 WL 2474051 (W.D. Okla. June 9, 2010) ............................................... 9

*In re Marion Merrell Dow Inc., Sec. Litig.*, No. 92-0609-CV-W-6,
    1994 WL 396190 (W.D. Mo. July 18, 1994) ................................................ 12

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litig.*,
    No. 11-MD-2247 ADM/JJK, 2012 WL 2512750
    (D. Minn. June 29, 2012) ........................................................ 17, 18

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011).......... 19

*Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004).......................................... 21, 23

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI,
    2020 WL 1970812 (D. Or. Apr. 24, 2020)...................................................... 6

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652,
    94 L. Ed. 865 (1950) ...................................................................... 25

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) .................................. 12

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985)............................................... 22

*SEECO, Inc. v. Haes*, 330 Ark. 402, 954 S.W.2d 234 (Ark. 1997) ................ 13, 24

*Smith v. ConocoPhillips Pipeline Co.*, 298 F.R.D. 575 (E.D. Mo. 2014)............. 17

*Smith v. SEECO*, Case No. 4:14CV00435,
    2016 WL 10586286 (E.D. Ark. April 11, 2016)...................................... 6, 16

*Stuart v. State Farm Fire and Casualty Company*,
    910 F.3d 371 (8th Cir. 2018)......................................................... 11

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)................................. 22

*Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL,
    2018 WL 1955425 (W.D. Mo. Apr. 24, 2018),
    *aff'd*, 963 F.3d 753 (8th Cir. 2020) ................................................................ 24

*W.W. McDonald Land Co. v. EQT Production Co.*, 983 F. Supp. 2d 790
    (S.D.W.Va. 2013) ...................................................................................... 9

*Walls v. Sagamore Ins. Co.*, 274 F.R.D. 248 (W.D. Ark. 2011) ..................... 11, 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541,
    180 L. Ed. 2d 374 (2011) ........................................................................ 7, 13

## Statutes

ARK. CODE ANN. § 15-72-201 ............................................................................ 1

ARK. CODE ANN. § 15-72-305 ................................................................... passim

ARK. CODE ANN. § 15-72-305(a)(3) ................................................................... 2

ARK. CODE ANN. § 15-72-305(a)(8)(C) .............................................................. 2

ARK. CODE ANN. § 15-72-102(8) ....................................................................... 1

ARK. CODE ANN. § 15-72-102(9) ....................................................................... 1

ARK. CODE ANN. § 15-72-701(6) ....................................................................... 1

## Other Authorities

AMI 2401 ......................................................................................................... 14

AMI 2445 ......................................................................................................... 15

## Rules

Fed. R. Civ. P. 23(a) ..................................................................................... 4, 5

Fed. R. Civ. P. 23(a)(1) .................................................................................. 11

Fed. R. Civ. P. 23(a)(2) ........................................................................ 13, 16, 18

Fed. R. Civ. P. 23(b)(2) .................................................................................. 24

Fed. R. Civ. P. 23(b)(2)—(3) ............................................................................ 6

Fed. R. Civ. P. 23(b)(3) ................................................................ 19, 20

Fed. R. Civ. P. 23(b)(2) ...................................................................... 24

Fed. R. Civ. P. 23(b)(3) ...................................................................... 18

Fed. R. Civ. P. 23(b)(3)(C) ................................................................ 23

Fed. R. Civ. P. 23(b)(3)(D) ................................................................ 23

Fed. R. Civ. P. 23(c) .......................................................................... 24

Fed. R. Civ. P. 23(c)(1)(B) ................................................................ 25

Fed. R. Civ. P. 23(c)(2)(B) ................................................................ 24

Fed. R. Civ. P. 23(g) .......................................................................... 18

## **Treatises**

*Restatement (Second) of Contracts* § 211(2) (1981) ............................. 11

The Plaintiffs Larry W. Eubanks and Carolyn D. Eubanks individually and on behalf of all others similarly situated (the "Landowners" or "Plaintiffs") are landowners who have sued Flywheel Energy Production, LLC, ("Flywheel") Energy, LLC ("Flywheel") and XTO Entergy, Inc. ("XTO")(collectively "Defendants"). The landowners sued the Defendants because they did not honor their contracts and legal obligations and pay them proper royalties for the gas extracted from their land. In this case, Flywheel is the operator of each putative Class Member's lease, and XTO is the leaseholder and owner.[1]

---

[1]    An oil and gas "**operator**" is a company or individual that is responsible for managing and conducting operations related to the exploration, development, and production of oil and gas resources. The operator is typically responsible for the technical and operational aspects of oil and gas development, including drilling, completion, and production activities. The operator also has responsibility for ensuring that all operations are conducted safely, efficiently, and in compliance with applicable regulations and environmental standards. *See* ARK. CODE ANN. §§ 15-72-102(8) and 15-72-201 (defining operator).

    A "**leaseholder,**" or "**owner**" on the other hand, is an individual or entity that holds the legal right to explore for, develop, and produce oil and gas on a particular parcel of land. *See* ARK. CODE ANN. §§ 15-72-102(9) and 15-72-701(6)(defining owner).The leaseholder has obtained the right to do so by entering into a lease agreement with the owner of the land. The lease agreement typically specifies the terms and conditions under which the leaseholder may explore for and produce oil and gas on the property, including the duration of the lease, the royalty payments that must be made to the landowner, and any other obligations or restrictions that must be followed.

    In general, the leaseholder is the party that holds the legal right to explore for and produce oil and gas on a property, while the operator is responsible for conducting the actual operations related to drilling, completion, and production. In some cases, the leaseholder and the operator may be the same entity, but in many cases, the two roles are separate and distinct.  The leaseholder and operator solidify

In this case, class certification is remarkably straightforward because Flywheel pays a portion of each Class Member's royalty in gross and even recognizes that the class members have gross proceeds leases.

Even though Flywheel recognizes that Class Members have "gross proceeds leases," Flywheel illegally uses ARK. CODE ANN. § 15-72-305(a)(3) to uniformly breach the terms of the leases. Flywheel justifies this as a benefit to its leaseholders when it pays them less than they have bargained for.

While Flywheel applies this statute to all class members, it ignores ARK. CODE ANN. § 15-72-305(a)(8)(C), which unambiguously states, "Nothing contained in this section shall effect the obligations of working interest owners with respect to the payment of royalties, overriding royalties, production payments, or similar interest in excess of the one-eighth royalty [ARK. CODE ANN. § 15-72-305(a)(3)] required to be distributed under this section."

Flywheel's illegal conduct puts them at a competitive advantage over honest competitors who honor their contracts. As explained in this Brief, class certification is appropriate in this case because each requirement of Rule 23(a) and (b)(2) and (3) are met.

---

their working relationship through a Joint Operating Agreement ("JOA"). A JOA provides the contractual basis for the cooperative exploration, development, and production of oil and gas properties among multiple leasehold cotenants. In this case, Flywheel is the operator and XTO was the leaseholder/owner.

I.   **INTRODUCTION**

This straightforward case involves Flywheel's scheme and course of conduct in its underpayment of royalties owed to Class Members with whom they have entered into oil and gas leases. The Plaintiffs' and Class's claims are susceptible to common proof—because they all turn on a common course of conduct—Flywheel's royalty calculation and payment practices it applies uniformly to all Class Members.[2]

Flywheel disregards the express language of their oil and gas leases that require Class Members' royalties to be paid based on a percentage of the gross proceeds. Instead, Flywheel pays the Class Members' royalties on the first 1/8th royalty based on the net proceeds (after taking deductions for expenses). Flywheel pays the Class Members' excess royalty (over the 1/8th) based on the gross proceeds, thereby acknowledging through its course of conduct the Class Members have gross proceeds leases. **Like its predecessor Southwest Energy (SWN), Flywheel has continued to recognize and treat the Class Members' leases as "gross proceeds"**

---

[2]    *See* Exhibit No. 1, *Flywheel's Responses to Request for Admission* No. 24, 25, 26, 39. *See also* Exhibit No. 2, HB1549 Beck Hearing Transcript at pg. 52—55 ("So we blend it. The statute tells us very plainly to do it on a net basis, in which costs are pulled out, so we do it that way. The issue, as you guys know, is that our predecessor didn't necessarily do it that way all the time . . . **We acknowledge that it's a difference and that some people didn't get deductions and are now having those deductions. It sounds like an injustice. What I would say is that those are windfall payments in favor of the royalty or incorrect payments were in favor of the royalty owner for many years. That stopped when we took over.**")(emphasis added). This is a legal issue for the Court to decide.

leases by paying all royalties in excess of the first 1/8th based on "gross proceeds."

Flywheel directed its conduct to all Class Members equally, who suffered the same injury. As a result—all Class Members did not receive the full royalties they were owed under their leases. Therefore, Plaintiffs' allegations—which involve substantially uniform contracts, a uniform body of law, and uniform conduct by Flywheel—can and will be proven with evidence common to all Class Members.

## II.    <u>LEGAL STANDARD</u>

A court should certify a proposed class, when a plaintiff demonstrates satisfaction of the requirements found in Rule 23(a) and (b) of the Federal Rules of Civil Procedure. Rule 23(a) sets forth four prerequisites:

> (1)    the class is so numerous that joinder of all members is impracticable;

> (2)    there are requirements of law or fact common to the class;

> (3)    the claims or defenses of the representative parties are typical of the claims and defenses of the class; and

> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are commonly called: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Gen. Tel. Co. v. E.E.O.C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319, 329 (1980).

After satisfying the requirements of Rule 23(a), a plaintiff must also establish

that the action qualifies for class action treatment under one of the three criteria in

Rule 23(b), two of which are relevant here:

> (2)     the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3)     the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

>> (A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

>> (B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

>> (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

>> (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2)—(3).

When determining whether to grant class certification, the United States

Supreme Court has held "Rule 23 grants courts no license to engage in free-ranging

merits inquiries at the certification stage . . . [m]erits questions may be considered

to the extent—but only to the extent—that they are relevant to determining whether

the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn.*

*Ret. Plans & Trust Fundings*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1194-95,

185 L. Ed.2d 308 (2013). The proposed class representatives are responsible for demonstrating the satisfaction of Rule 23. *See Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. 02-1236 RHK/AJB, 2003 WL 1955169, at *2 (D. Minn. Apr. 21, 2003).[3] "The class certification analysis under Rule 23 is 'rigorous' and may 'entail some overlap with the merits of the plaintiffs underlying claim,'" *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 1970812, at * 2 (D.Or. Apr. 24, 2020)(*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S.Ct. 2541, 2551, 180 L.E.2d 374 (2011)), but "[m]erits questions may be considered [only] to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied*." Id.*

Here, the proposed Class meets all the requirements of Rule 23(a) and the requirements of Rule 23(b)(2) and Rule 23(b)(3). As explained in exhaustive detail herein, the claims of the Plaintiffs and the Class Members will either succeed or fail as one based on the Court's legal interpretation and application of ARK. CODE ANN. § 15-72-305, rendering class treatment appropriate.

---

[3]     Some courts have suggested that Rule 23 has two "implicit requirements": "That membership in the class definition by ascertainable by some objective standards and that the class representatives be members of the proposed class." *Smith v. SEECO,* Case No. 4:14CV00435, 2016 WL 10586286, at *4 (E.D. Ark. April 1, 2016)(quotation omitted). Whether or not a class member is a royalty owner in Arkansas wells which XTO owned and Flywheel operated under any one of the following lease forms is completely objective and there is no question Plaintiffs are members of the proposed Class.

### III.   FACTUAL BACKGROUND

### A.   Flywheel's Uniform Royalty Payment Practices

Plaintiffs and the Class Members own mineral interests in wells throughout Arkansas and have entered into oil and gas leases with Flywheel. Previously these oil and gas leases were owned and operated by SWN. SWN historically recognized the class members as "gross proceeds' leases and paid royalty payments to the Class Members based on the gross proceeds. SWN did not take expense deductions from royalty payments or other post-production expenses as to lessors whose *leases otherwise contained language attempting to prohibit such deductions. See* Exhibit No. 1, *Flywheel's Responses to Request for Admission* No. 23, 26, 31. *See also* Exhibit No. 2, HB1549 Beck Hearing Transcript at pg. 52—55.

On May 1, 2019, Flywheel became obligated to make royalty payments to the Plaintiffs and the Class Members based on its obligation as "operator" of the leaseholds and wells in which the Plaintiffs and the Class Members owned mineral interests under ARK. CODE ANN. §15-72-304. XTO became obligated to make royalty payments to the Plaintiffs and the Class Members as owners.

Once XTO acquired the leases and became the lessee and Flywheel became the operator, Flywheel changed how SWN had historically paid the Class Members. Instead of paying the Class Members based on "gross proceeds" for all royalty payments, Flywheel paid the Class Members based on "net proceeds" on the first

1/8th royalty.

Flywheel claims ARK. CODE ANN. § 15-72-305 allows it to ignore the "gross proceeds" language of the leases on the first 1/8th royalty. This is the simple common question for all Class Members. Does ARK. CODE ANN. § 15-72-305 allow Flywheel to pay net proceeds on the first 1/8th royalty payments when the parties have contracted for royalty payments based on "gross proceeds"? **Like their predecessor SWN, Flywheel continued to recognize and treat the Class leases as "gross proceeds"  by paying all royalties in excess of the first 1/8th based on "gross proceeds."**

Flywheel owes royalty payments to the Plaintiffs and the Class Members under the leases based on the gross proceeds received by Flywheel. Flywheel is responsible to the Plaintiffs to correctly determine, calculate and pay the royalties owed to the Plaintiffs and the Class Members on the gas produced from the Arkansas wells.

Plaintiffs have analyzed leases produced by XTO, which represent common lease forms with identical royalty payment terms requiring royalty payments to be based on gross proceeds. See Exhibits Nos. 3—12. The leases objectively determine class membership, as explained herein. S*ee Hill v. Kaiser-Francis-Oil Co.*, No. CIV-09-07-R, 2010 WL 2474051, *6 (W.D. Okla. June 9, 2010)("the identities of the class members are easily ascertained from defendant's payment records and county

registers of deeds"). Plaintiffs have attached a sample of ten leases for each lease form in these common lease groups.[4] All of these lease groups require Defendants to pay royalties based on the gross proceeds received by Defendants from the sale of gas under the common lease forms.

Flywheel did not pay the Plaintiffs and the Class under the gross proceeds terms of these leases. Instead, Flywheel paid based on the net proceeds for the first 1/8th of Plaintiffs' and the Class' royalties but paid the gross proceeds for the remaining excess royalties owed to the Plaintiffs and the Class. Flywheel argues it can do this because it interprets an Arkansas statute, ARK. CODE ANN. § 15-72-305, which it uniformly applies to the Plaintiffs and the Class's leases. This is a legal issue for the Court to decide.

## IV.   <u>ARGUMENT</u>

This case turns on Flywheel's common course of conduct (*e.g.,* Flywheel's uniform application of ARK. CODE ANN. § 15-72-305), which it uniformly applies

---

[4]     These Lease Form Summaries are attached as Exhibits Nos. 3—12 to Plaintiffs' Motion for Class Certification. These common types of oil and gas leases are commonly referred to as "Gross Proceeds Leases." These groups include leases with royalty clauses that provide for royalty payments based on "actual amount received," "no deduction, no cost" and/or "Gross Proceeds." There are serval lease forms that make up each lease group. Nevertheless, each lease form requires XTO (and Flywheel) to pay the Lessor the gross proceeds received by XTO from the sale of gas pursuant to each lease, without deduction of any cost or expenses. *See W.W. McDonald Land Co. v. EQT Production Co.*, 983 F.Supp.2d 790 (S.D.W.Va. 2013)(at summary judgment analyzing fourteen leases with similar royalty provisions to determine if leases permit deductions for monetary costs).

to the Plaintiffs and the Class's leases, directs at all Class Members, and affects all Class Members in the same way. This is precisely the type of gas royalty case routinely certified by other courts, including those in Arkansas, when the plaintiff has met its burden of showing class certification is appropriate. *See* Exhibit No. 13, *Survey of Cases*.

More generally, district courts will certify class actions that involve a breach of contract claims which stem from uniform contracts applied through a uniform course of conduct to an identifiable class of people. Because a standard contract must be given a consistent, uniform interpretation. *See Restatement (Second) of Contracts* § 211(2)(1981). *See also Stuart v. State Farm Fire and Casualty Company,* 910 F.3d 371, 375 (8th Cir. 2018)(the viability of a theory that an insurer violated its contractual obligations by depreciating both materials and labor when calculating actual cash value, reducing size of actual cash value payments, was "well suited to class wide resolution."). In short, this Court would break no new ground in certifying this case as a class action.

**A.    Plaintiffs have met their burden of satisfying Rule 23(a)'s Requirements (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.**

**1.    Numerosity.**

Rule 23(a)(1) requires a plaintiff to show that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In establishing

numerosity, a plaintiff does not need to show the exact number of potential class members, only that the number is such that joinder is extremely difficult or inconvenient." *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 248, 253 (W.D.Ark. 2011)(citations omitted). When considering close questions of numerosity, "courts tend to strike a balance in favor of finding numerosity." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 551 (W.D.Mo. 2014). Generally, "a putative class with over forty members meets the numerosity requirement." *Smith,* 2016 WL 10586286, at *5.

Again, a plaintiff need not establish the exact size of the class, only that joinder of all its members is impracticable because of its size or other factors. *See In re Marion Merrell Dow Inc., Sec. Litig.*, No. 92-0609-CV-W-6, 1994 WL 396190, at *2 (W.D. Mo. July 18, 1994). Relevant factors include the number and geographic dispersion of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the impracticability of joining all the class members. *See, e.g.*, *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560-61 (8th Cir. 1982)(numerosity satisfied for subclass of approximately 74 employees).

Here, joinder of all class members is impracticable. Moreover, XTO has produced over 1,000 leases, which the Plaintiffs have reviewed and categorized. *See* Exhibits Nos. 3—12, *Lease Summaries*. *See also* Exhibit No. 1, *Response to Request*

*for Admission No. 28*. *See also* Exhibit No. 14, *Defendant's Notice of Removal* [ECF No. 1] at 3, 4 & 7.

Joinder of the Class Members holding these leases is impracticable and the numerosity requirement of Rule 23(a)(1) is satisfied.

### 2.    Commonality.

Rule 23(a)(2) requires there be "questions of law or fact common to the class" before the court may grant class certification. In *Dukes*, 564 U.S. at 350, the Supreme Court clarified that district courts should determine whether a common question can be answered in a classwide proceeding, such that the answer will "drive the resolution of the litigation." *Id.* at 2551. The Supreme Court has held that even a "single common question will satisfy" Rule 23(a)(2). *Id.* Where a "common course of conduct" is alleged to have caused an injury to all Class members, the commonality requirement is satisfied. *See SEECO, Inc. v. Haes*, 330 Ark. 402, 954, 954 S.W.2d 234 (Ark. 1997)("alleged overall scheme and course of conduct by the defendants designed to defraud the members of the proposed class as a group irrespective of the type of oil and gas lease or the volume of production from the leases..."). *See also Arkansas Louisiana Gas Co. v. Morris*, 294 Ark. 496, 744 S.W.2d 709 (Ark. 1988)("a common question of fact that all fixed price lessors have been treated identically by the defendant lessees for a number of years). The central and common question in this case is common to all Class Members, and capable of

resolution "in one stroke," as *Dukes* requires. *Dukes*, 131 S.Ct. at 2551. Plaintiffs satisfy the commonality requirement.

The claims of the Class Members will turn the answer to common questions, and will be proved with common evidence, specifically the propriety of Flywheel's application of ARK. CODE ANN. § 15-72-305 to gross-proceeds-type leases. If the Court finds Flywheel's conduct is not allowed by ARK. CODE ANN. § 15-72-305, all the Class Members prevail. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 683 (E.D. Okla. Oct. 3, 2019).

Because the interpretation of ARK. CODE ANN. § 15-72-305 and the Class Members' leases is a question of law, the Court can also enter declaratory judgment on behalf of the classes under Rule 23(b)(2). *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.2d 402, 427 (6th Cir. 2012)("Rule 23(b)(2) certification remains available . . . when the plaintiffs seek a declaration about the meaning of a contract").Further, to prove a claim for breach of contract in Arkansas (Count II) a plaintiff must show: (1) the plaintiff and defendant entered into a contract; (2) the contract required the defendant to perform or not to perform a certain act; (3) the plaintiff did what the contract required of it; and (4) the defendant did not do what the contract required of it. AMI 2401. This count requires the same proof for all class members.

To prove a claim for unjust enrichment (Count III), a plaintiff must show: (1) plaintiff provided goods to defendant who received the benefit of such goods; (2)

the circumstances were such that the plaintiff reasonably expected to paid the value of such goods by defendant; (3) the defendant was aware that plaintiff was providing such goods with the expectation of being paid and accepted the goods; and (4) the reasonable value of such goods received by the defendant. AMI 2445.

On the merits, the Plaintiffs will show that Defendants' practice is to ignore lease terms that require the lessee to pay the gross proceeds derived from the sale of all oil and gas (including the substances contained in such oil and gas) produced, saved, and sold by the lessee and prohibit the lessee from deducting any gathering, transportation, dehydration, treatment, compression, processing, marketing costs or other costs.[5] Instead, of complying with the lease provisions, Flywheel paid the first 1/8th of Plaintiffs and the Class Member's royalties and paid the remaining excess royalty of the Plaintiffs and the Class Member's royalties, based on gross proceeds.

Flywheel (and XTO) argues it can ignore the language of the lease  this because of Arkansas statute, ARK. CODE ANN. § 15-72-305, which it uniformly applies to the Plaintiffs and the Class' leases. This presents a common question of

---

[5]     It is settled law in Arkansas that any ambiguities in an oil and gas lease are construed against the lessee. *See Hanna Oil v. Taylor*, 759 S.W.2d 563, 565 (Ark. 1988). Further, unless something in the context of an agreement provides otherwise, "proceeds" generally means "total proceeds." *Id.* at 564. Further, any ambiguities in an oil and gas lease are construed in favor of the lessor and against the lessee. *Bodcaw Oil Co., Inc. v. Atlantic Refining Co.*, 217 Ark. 50, 61, 228 S.W.2d 626, 633 (1950).

law, and Rule 23(a)(2) is satisfied. *See Arkansas La. Gas Co.*, 744 S.W.2d at 710 (Ark. 1988)(affirming class certification and recognizing that whether a lessee may simply ignore royalty provisions is a common question, giving rise to a claim for all class members). Although there some variation among the royalty clauses organized by Plaintiffs, *see infra*, that presents no impediment for commonality because of how Flywheel pays royalties. *See Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 764500, * 4 (W.D. Okla. Apr. 20, 2009)(holding communality was met where "there is no difference in how royalties are paid to members of the class based on the lease language."). Additionally, the question of what remedy is owed to the Class members is a question common to the Class.[6] Plaintiffs have satisfied Rule 23(a)(2)'s requirement of commonality.

### 3. **Typicality.**

The Eighth Circuit defines typicality as requiring "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Smith v. ConocoPhillips Pipeline Co.*, 298 F.R.D. 575, 584 (E.D. Mo. 2014)(*citing Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990)). To satisfy

---

[6]     *See Smith*, 2016 WL 10586286, * 6 ("Although individual class members might have different damage amounts, individualized damages do not preclude class certification, especially in cases where a single methodology can easily determine damage amounts."). Flywheel has already determined the damages that are at issue. *See* Exhibit No. 14, *Defendant's Notice of Removal*, [ECF No. 1] at pg. 9, total deductions taken from the class is $540,508.01.

this requirement, a plaintiff must show there are "other members of the class who have the same or similar grievance as the plaintiff." *Wallis*, 274 F.R.D. at 254 (internal quotation and citations omitted). "Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." *In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 2512750, at *14 (D.Minn. June 29, 2012)(internal quotation and citation omitted). "Class representatives need not share identical interests with the class, only common objectives and legal and factual positions." *Cromeans*, 30 F.R.D. 543, at *12 (*citing Uponor Inc., F1807 Plumbing Fittings Products Liability Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013)).

Plaintiffs easily satisfy the typicality requirement. They share the interests of the other Class Members in being paid properly for the royalties owed to them, they each have gross-proceeds type leases, and the legal and factual theories they are asserting are the same as those of the Class. S*ee Freebird, Inc. v. Merit Energy Co.*, Civil Action No. 10-1154-KHV-JPO, 2011 WL 13638, *5 (D. Kan. Jan. 4, 2011)("[H]ere, plaintiff's claims are typical of all members claims because they all entered into gas lease agreements with defendant, they assert the same legal theory to recovery royalty payments and they all suffered the same type of harm."). The Plaintiffs, like the Class, seek damages and declaratory relief to remedy the Defendants' unlawful conduct. While the relief to the Plaintiffs may result in greater

or less benefits that that due to other individual Class members, "the relief sought in the action is the same regardless of the amount of [damages]," and any potential variations in individual damage amounts will not defeat typicality. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). The Plaintiffs damages can be established through the Royalty Payment Deck and Check Histories. Plaintiffs have satisfied Rule 23(a)(3)'s requirement of typicality.

    **4.**   **<u>Adequacy</u>.**

"In determining the adequacy of representation, the Court makes a two-fold inquiry to determine whether: (1) the class representatives have common interests with members of the class; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Uponor*, 2012 WL 2512750, at *15 (internal citation and quotation omitted).

Plaintiffs satisfy this requirement. There are no conflicts between them and the Class they seek to represent, and they have clearly demonstrated that they are dedicated to prosecuting this action. *See* Exhibits No.  15, *Declarations of Plaintiffs*. Further, as previously argued, Plaintiff's counsel satisfies the requirements of Rule 23(g) and seek an order appointing them to represent the certified class. *See* [ECF No. 45] and Order [ECF No. 61]. Rule 23(a)(4) requirement of adequacy is satisfied.

### B.     Plaintiffs Satisfy Rule 23(b)(3).

#### 1.     Common Questions of Law and Fact Predominate.

Rule 23(b)(3) requires that "common issues of fact or law must predominate over questions affecting individual members." Fed. R. Civ. P. 23(b)(3). This requirement "tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). In *Amgen*, the Supreme Court held that "Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' [quoting dissent]. What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.' Fed. Rule Civ. Proc. 23(b)(3)(emphasis added)." *Amgen* 133 S.Ct. at 1196.[7] The *Amgen* court directs district courts to assess whether a class's claims will "prevail or fall in unison." *Id.* at 1191. As the Eighth Circuit has explained, "individual issues are those which require evidence that varies from member to member to make a prima facie showing." *In re Zurn Pex*, 644 F.3d at 618. There are no such issues

---

[7]     The Eighth Circuit was already in accord with this approach prior to *Amgen*. It held, "The question at class certification is not whether the plaintiffs have already proven their claims through common evidence. Rather, it is whether questions of law or fact capable of resolution through common evidence predominate over individual questions." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 (8th Cir. 2011)(internal citation omitted).

here, because all of Plaintiffs' claims are susceptible to the same common proof. Given their identical treatment by Flywheel, the class members possess such cohesion, and all Class Members base their claims on the same legal theory. *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 76500, *7 (W.D. Okla. Apr. 20, 2009).

Plaintiffs set forth above how the questions at the heart of each of Plaintiffs' claims can be answered on a classwide basis. The proof that Plaintiffs will use to establish each claim will be common to the Class, because it will focus on Flywheel's conduct: their uniform royalty payment methodology, which is applied to all Class Members. Courts have repeatedly held that where an oil or gas's royalty payment practices are uniform across its lessors, as they are in this case, common issues predominate. *See* Exhibit No. 13, *Survey of Cases*.

This Action will turn on common evidence, the Court's legal analysis and interpretation of a statue, which is commonly applied to all Class Members. Damages can be determined by records from the Defendants. Rule 23(b)(3)'s predominance requirement is satisfied.

## 2.   A Class Action is Superior to Any Other Method of Adjudicating These Claims.

Rule 23(b)(3) also requires that the court find "that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class action is superior—indeed, the only—method of

-19-

resolving these claims. In assessing superiority, "the court is to compare the possible alternatives to a class action and determine if any is superior to the proposed class action." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 909 (N.D. Iowa 2008). Federal Rule of Civil Procedure 23(b)(3)(A)—(D) sets forth four factors this Court should consider in determining whether a class action is superior to individual lawsuits for the resolution of the claims at issue. Analysis of these four factors confirms the superiority of a class action in resolving these claims.

Under Rule 23(b)(3)(A), this Court should consider the interests of the Class Members in individually controlling the prosecution of separate actions. This is the classic case in which individual Class Members do not have the financial incentive or ability to challenge Flywheel's conduct individually. This Action fulfills what the Supreme Court has recognized as the class action's promise of providing similarly situated plaintiffs with relatively small claims an opportunity to obtain redress. *See, e.g., Amchem Prods.*, 521 U.S. at 617; *Klay v. Humana*, 382 F.3d 1241, 1271 (11th Cir. 2004)(noting that relatively small size of claims supports class certification especially when the "defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings"). Because individual Class Members cannot take on the expense and burden of prosecuting their claims, as a practical matter, the Class Members simply will not have their claims heard

without a class action.

The United States Supreme Court has recognized the prevailing judicial view that class actions are the superior mechanism to provide access to a level playing field when a multiple of property owners are pitted against a powerful energy company and its conduct in honoring standard gas contracts at issue.

In *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985), which involved gas lease royalty payments and a breach-of-contract claim for overdue royalty payments, the Court noted that:

> the class action was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the litigation was too great to permit joinder. The absent parties would be bound by the decree so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest. Modern class actions follow the same goals, permitting litigation of a suit involving common questions where there are too many plaintiffs for proper joinder. Class actions may also permit the plaintiffs to pool claims which would be uneconomical to litigate individually.

472 U.S. at 808-809 (footnote and citation omitted). Litigation has grown only more expensive since *Shutts*, and litigants face more formidable barriers here that the class action was designed to overcome. A class action is the superior form of adjudication of this dispute.

A class action is unquestionably able "to reduce litigation costs through the consolidation of recurring common issues." *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 426 (4th Cir. 2003)(internal quotation omitted). A class action is

-21-

superior where the alternatives "are individual lawsuits by class members . . . [which] would be more burdensome on the class members, and it would be likely to be less efficient use of judicial resources." *See Bouaphakeo*, 564 F.Supp. at 909 (*citing Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234—35 (9th Cir. 1996)). As the Advisory Committee notes to Rule 23 state, the Court, in considering other pending litigation in its superiority analysis, should be aware that the interest of controlling separate lawsuits may be "theoretical rather than practical." Fed. R. Civ. P. 23 advisory committee's notes (1966 amendments).

Rule 23(b)(3)(C) addresses the desirability of concentrating the litigation of these claims in this forum. Here, the subject property is located in this district and the gas at issue was produced in this district in Arkansas. Further, all claims are governed by Arkansas substantive law. Concentrating the litigation of these claims in this Court is therefore the most efficient way of resolving this dispute.

Rule 23(b)(3)(D) requires an assessment of the manageability of this action. Manageability should be considered only in relationship to the alternative means of adjudication. In other words, the Court determines whether class certification would "create relatively more manageability problems than any of the alternatives (including, most notably . . .  separate lawsuits by the class members)." *Klay*, 382 F.3d at 1273. *See also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)("[A] class action has to be unwieldy indeed before it can be pronounced an

inferior alternative... to no litigation at all."). There are no manageability concerns here, as liability can be determined on a classwide basis, Class members are easily identifiable (indeed, they are already identified) by objective reference to Defendants' records, and there are no administrative obstacles to sending the notice required by Rule 23(c)(2). Courts have administered numerous gas royalty class actions through resolution with no administrative difficulties. *See e.g., SEECO*, 330 Ark. 402.

### C.   **Plaintiffs Satisfy Rule 23(b)(2).**

With respect to the Plaintiffs' claim for declaratory judgment (Count I), the proposed class satisfies Rule 23(b)(2) because Flywheel and XTO "has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A Determination of the merits of Court II (breach of contract) will turn on the same evidence supporting Count I (Declaratory Judgment). Certification under Rule 23(b)(2) is also appropriate. *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1955425, at *7 (W.D. Mo. Apr. 24, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020).

### V.   **NOTICE**

Rule 23(c) of the Federal Rules of Civil Procedure requires that "for any class certified under Rule 23(b)(3)," members of the Class should receive "the best notice

that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Courts construe this Rule as vesting a trial court with wide discretion to fashion the appropriate notice in particular circumstances, "subject only to the reasonableness standard of due process." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)(concluding that due process is satisfied if notice is "reasonable calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). *See also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)(same). Here, individual notice is practicable because information in the files of Flywheel and XTO  makes possible individual notice to all Class Members, through electronic notice using Flywheel's "*EnergyLink Portal*" and Email notice available to all Class Members. *See* Exhibit No. 15, *Declarations of Plaintiffs.* Plaintiffs have concurrently filed a Motion for Approval of Class Notice Pursuant to Rule 23(c) of the Federal Rules of Civil Procedure.

## VI.   <u>CLASS DEFINITION</u>

Rule 23(c)(1)(B) requires this Court to define the class or classes being certified. *See* Fed. R. Civ. P. 23(c)(1)(B). Plaintiffs seek an Order from this Court Certifying the Class, as defined herein under Fed. R. Civ. P. 23(b)(2) and (3) of a

class of all persons who are or have been since January 2019, royalty owners in Arkansas wells where XTO was the leaseholder/owner and Flywheel was the operator under a lease form with one of the following royalty payment provisions:

> **Lease Form No. 1**:      that contain the following language, "*Lessee covenants and agrees as follows with regard to royalty to be paid under the lease:*
>
> *B.      To pay Lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the lease premises, or used in the manufacture or products therefrom [royalty rate percentage] of the <u>gross proceeds</u> received by Lessee for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than [royalty rate percentage] of the actual amount received by Lessee, said payments to be made monthly;*
>
> *D.      Lessee shall not deduct any costs or expenses from such gross proceeds except Lessor's pro rata share of any severance taxes that may become payable out of Lessor's share of gross production.*"[8]
>
> **Lease Form No. 2**:      that contain the following language, "*Lessee shall pay Lessor [Royalty Rate Percentage] of the proceeds derived from the sale of all gas at the well (including substances contained in such gas) produced, saved, and sold by Lessee. <u>Proceeds are defined as the actual amount received by the Lessee for the sale of said gas in an arm's length, non-affiliated transaction</u>. In the event that the sale is to an Affiliate ("Affiliate" being defined as having a Ten percent (10% percent common ownership), then the proceeds derived from the sale of all gas shall be a price no less than that received from any other purchaser withing the governmental township and range which the lease is situated.*"[9]

---

[8]      Ten examples of <u>Lease Form No. 1</u>: are attached as Exhibit No. 3.

[9]      Ten examples of <u>Lease Form No. 2</u>: are attached as Exhibit No. 4.

**Lease Form No. 3**:   that contains the following language, "*Royalty shall be free of costs or deductions.*"[10]

**Lease Form No. 4:**   that contain the following language, "*notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease shall be without deduction, of any kind whatsoever, directly or indirectly, including but not limited to the cost of gathering, transporting, treating, compressing, processing, marketing, or otherwise making gas, oil or other products produced hereunder merchantable or otherwise enhancing the marketability of said gas, oil or other substances.*"[11]

**Lease Form No. 5:**   that contain the following language, "*To pay Lessor for gas of whatever nature or kind (with all its constituents to include all benefits from said Lease such as storage payments or take or pay settlements) produced and sold or used off the Lease Premises, or used in the manufacture of products therefrom, [royalty rate percentage] of the gross proceeds received for the gas sold, used off the Lease premises, or in the manufacture of products therefrom .*"[12]

**Lease Form No. 6:**   that contain the following language, "*Lessee shall pay or, if required by law, contribute to be paid the Lessor [royalty rate percentage] of the gross proceeds released by Lessee at the well for all gas (including all substances contained in gas) produced from the leased premises and sold by Lessee, but such Royalty Interest shall bear any paid its proportionate share of all taxes and the actual reasonable costs (including related fuel charges) paid to or deducted by a third party to gather, transport, compress, stabilized, process and treat the oil, gas and other minerals in connections with the marketing of production.*"[13]

---

[10]   Ten examples of Lease Form No. 3: are attached as Exhibit No. 5.

[11]   Ten examples of Lease Form No. 4: are attached as Exhibit No. 6.

[12]   Ten examples of Lease Form No. 5: are attached as Exhibit No. 7.

[13]   Ten examples of Lease Form No. 6: are attached as Exhibit No. 8.

**Lease Form No. 7:**      that contain the following language, "*2. Lessee shall pay Lessor [Royalty Rate Percentage] of the proceeds derived from the sale of all gas (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the <u>actual amount received</u> by the Lessee for the sale of said gas*."[14]

**Lease Form No. 8:**      that contain the following language, "*Lessor's royalty shall be computed on the sales price that Lessee received from the sale of gas at the mouth of the well. However, if any sale of said gas is made to a purchaser, and Lessee should receive any amount either directly or indirectly from the purchase, whether as a result of a re-sale thereof by purchaser or otherwise, then in such even, the price of said gas at the well shall be increased by this additional amount and Lessor shall receive its proportionate part thereof. <u>It is expressly understood that Lessor's royalty on the sale of oil and gas, including casing head gas, shall be delivered free and clear from all cost, including but not limited to, cost of gathering, treating, separating, measuring, compression, processing, dehydration, manufacturing, marketing, trucking or transporting.</u>*"[15]

**Lease Form No. 9:**      that contain the following language, "*Lessee shall pay Lessor [Royalty Rate Percentage] of the ~~net~~ proceedings derived from the sale of all gas (including substances contained in such gas) produced, saved, and sold by Lessee. Net proceeds are defined as the actual amount received by lessee for the sale of gas less any necessary costs to render gas marketable after production, including compression, if necessary, and any expense incurred by lessee in the transportation from the well to the purchasers pipeline*."[16]

**Lease Form No. 10:**      that contains the following language, "*Lessee agrees that <u>Lessor shall not be responsible for any production costs</u>, except Lessor shall be responsible for their proportionate share of third party cost associated with the transportation and treatment of the*

---

[14]      Ten examples of <u>Lease Form No. 7</u>: are attached as Exhibit No. 9.

[15]      Ten examples of <u>Lease Form No. 8</u>: are attached as Exhibit No. 10.

[16]      Ten examples of <u>Lease Form No. 9</u>: are attached as Exhibit No. 11.

-27-

*production from the herein leased lands or lands pooled therewith. In no event will the price paid to Lessor for Lessor's share of the products be less than the price paid Lessee for Lessee's share of the products.*"[17]

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Class Certification, appoint Plaintiffs as Class Representatives, and appoint the counsel below as Class Counsel.

DATED: March 24, 2023       Respectfully Submitted,

M. Edward Morgan, (AR #82113)
Nathan S. Morgan (AR#09269)
MORGAN LAW FIRM, P.A.
244 Highway 65 North, Suite 5
Clinton, AR 72031-7085
(501) 745-4044 / fax: (501) 745-5358
Email: eddie@medwardmorgan.com
Email: nathan@morganlawfirmpa.com

Thomas P. Thrash, esq. (#AR 80147)
Will T. Crowder, esq. (#AR 03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: tomthrash@thrashlawfirmpa.com
Email: willcrowder@thrashlawfirmpa.com

---

[17]     Ten examples of <u>Lease Form No.10</u>: are attached as Exhibit No. 12.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Friday, March 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

PPGMR LAW, PLLC
G. Alan Perkins, esq.
M. Christine Dillard, esq.
Samuel S. McLelland, esq.
P.O. Box 3446
Little Rock, AR 72203-3446
(501) 603-9000 / fax (501) 603-0556
Email: Alan@ppgmrlaw.com
Email: Christine@ppgmrlaw.com
Email: Sam@ppgmrlaw.com

Elizabeth L. Tibelts
K&L GATES LLP
301 Commerce Street, Suite 3000
Fort Worth, TX 76102-4136
(817) 347-5270 / fax (817) 347-5299
Email: Elizabeth.tiblets@klgates.com

Robert M. Honea
HARDIN, JESSON & TERRY, PLC
5000 Rogers Avenue, Suite 500
Fort Smith, AR 72917-2098
(479) 452-2200 / fax (479) 452-9097
Email: honea@hardinlaw.com

Will Crowder (#AR03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: willcrowder@thrashlawfirmpa.com